**William Forrest PERRY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Sept. 27, 1974.

Geoffrey P. Morris, Louisville, for appellant.

Ed W. Hancock, Atty. Gen., John C. Ryan, Sp. Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

William Forrest Perry was indicted for the murder of drowning of his 17-month-old stepdaughter, Tina Marie Myles. He was afforded a trial by jury which resulted in a verdict that he was guilty of involuntary manslaughter, first degree, in causing the death of the child. The jury fixed his punishment at 15 years' confinement in the penitentiary. Perry appeals from a final judgment entered in accordance with the verdict. We affirm.

The first claim of error advanced by Perry is that the trial judge committed reversible error when he failed to direct a verdict of acquittal at the close of the Commonwealth's evidence. Although appellant expresses his point of argument as a failure to show the cause of death of the decedent, actually the discussion on his brief is directed to a claim that the Commonwealth failed to establish what in more recent times has been generally called "the body of the crime" but was generally called in former times "the corpus delicti." In Clouser v. Commonwealth, Ky., 504 S.W.2d 694 (1973), we still used the old English term "corpus delicti" but defined the principle as the requiring of the prosecution in a homicide case to show (1) a death and (2) that the death resulted from the criminal agency of another. This expression delineates in general terms the ele-

ments required of the prosecution in a homicide case to show the "body of the crime" in sufficient fashion to allow submission of the case to the jury. A corollary, as pointed out in Clouser, is that the body of the crime may be shown by circumstantial evidence, but the circumstances shown must be more consistent with guilt than with innocence.

The Commonwealth's evidence against Perry presented a distressing picture of child abuse. Perry's wife testified that he had demonstrated a hostile attitude toward the child during the time of their brief marriage. She was working on the night of the child's death and had left her in Perry's care. In perfectly voluntary statements to the police and in subsequent letters to his wife, Perry attempted to exculpate himself but admitted horrible instances of mistreatment of the child. According to Perry's statements to the prosecution on the night of her death, he dunked the child repeatedly in the bath tub in order to "discipline her" and to "keep her awake." When he removed her from the tub, he placed her in front of a fan. He then noticed she wasn't breathing. He called his wife and stated that the child had stopped breathing. With the aid of a passing motorist, he took her to the hospital where she was pronounced dead on arrival.

An autopsy was performed. The autopsy physician, a third-year resident in anatomical clinical pathology at the University of Louisville, testified that the cause of death was "anoxia" which he defined as "lack of oxygen." The autopsy revealed a large amount of swelling of the brain and lungs caused by fluid. The right lung weighed 200 grams and the left lung weighed 150 grams as contrasted with normal weights of 75 grams and 62 grams. The autopsy also disclosed five petechia of the right lung. Petechia are hemorrhages and are caused by capillary vessel breakdown due to lack of oxygen. Although the resident in pathology did not consider the history of what had happened to the child and refused to state that drowning was the specific cause of death, he agreed that his finding of "anoxia" was consistent with drowning. Other producing causes of "anoxia", such as coronary occlusion or carbon monoxide poisoning, were substantially eliminated as possibilities.

■ If we were relegated to dealing with the physician's testimony alone, we would be faced with a difficult problem, but we are not so constricted. Perry claims that his voluntary statements were inadmissible as violative of the principles of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. He admits the warnings were given to him both before custody and afterwards. His only objection is the wording of the warnings. His objection is specious. We find that he was fully apprised and fully aware of his constitutional rights as enunciated in Miranda and that his statements concerning his activities with the child were properly admissible.

■ Having determined the admissibility of Perry's statements, we conclude that when they are considered, together with the medical testimony and his past hostile behavior toward the child, they surely establish a state of evidence from which an impartial juror could conclude that the child drowned as the result of the criminal act of Perry. The statements attributed to Perry were not confessions. He did not confess guilt of any charge. He denied any criminal intent. The statements, therefore, constituted statements against interest and were as admissible to establish the "body of the crime" as was the testimony of the physician. The total testimony, therefore, was indicative of guilt and was not in such posture as it could be described as equally consistent with guilt or innocence. Cf. Dolan v. Commonwealth, Ky., 468 S.W.2d 277 (1971).

■ The remaining claim of error concerning the admission of photographs of the decedent's body is without merit. They

were relevant to the testimony of the physician. They were neither inflammatory nor gory in any detail. Rather they depicted an attractive young child who had some bruises and marks on her body consistent with the testimony.

We find under the evidence that the jury's verdict finding Perry guilty of a "reckless disregard of human life" was fully sustainable.

The judgment is affirmed.

All concur.