Billy Charles LEFEVERS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Oct. 28, 1977.

J. C. Helton, Gerald L. Greene, Helton & Greene, Pineville, for appellant.

Robert F. Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On November 5, 1974, John Slusher, a grocer, was shot to death and robbed in his store. On September 14, 1976, the appellant, Billy Charles Lefevers, was indicted by the Bell County Grand Jury for the offenses of murder and robbery. A five-day trial ended with the jury finding appellant guilty of the crime of murder in the commission of robbery and he was sentenced to life imprisonment.

Mitchell Saylor was also charged with the same offenses by separate indictment. He plea bargained and received a lesser sentence.

On this appeal appellant cites five errors, each of which it is charged, if meritorious, would require a reversal. The issues presented call for a review of the evidence.

The first witness to testify for the Commonwealth was Mitchell Saylor, who freely and frequently invoked his constitutional privilege by refusing to answer questions which would tend to incriminate him in the commission of the offenses. The court liberally granted his objections. However, after plea bargaining, Saylor was called again to testify. He stated that on November 5, 1974, the date of the offenses, he and appellant, who are second cousins, drove in appellant's car to John Slusher's store at Redbird, Kentucky, on their way to Somerset, Kentucky. Appellant went into the store and Saylor remained in the car. Saylor stated that he heard three or four gunshots, so he got out of the car and went into the store, where he found appellant loading his gun and John Slusher, the victim, lying on the floor. He and appellant then left the store, with appellant carrying some guns, some money, and a watch. They then drove to Somerset and spent about a week with a Katherine Price, the mother of appellant's girlfriend, where they also hid the guns. A day or so after the robbery the two of them drove back to Lexington, Kentucky, where appellant sold the watch at a pawn shop for $80. The guns were retrieved and placed in appellant's car. After several days the two of them returned to Cincinnati, Ohio, where they had been living. They gave the guns to Jim Meredith, a person with whom they had been working.

Appellant denied that he had anything to do with the killing or robbery of John Slusher. He denied that he was in the Slusher grocery on the fateful day. The only knowledge appellant had of the murder-robbery was what he learned from other persons. He testified that he and Saylor were living and working in Cincinnati, and that they had been on a weekend visit at his mother's home in Newtown, Kentucky. He said that on the day prior to the murder-robbery Saylor borrowed his car and returned it in the early afternoon of the following day, and that shortly thereafter the

two of them left and went to the home of Janice Price. While enroute Saylor told him that he had traded an automobile for a watch, three or four handguns, and a .22-caliber rifle. Saylor gave appellant the watch and hid the guns in a barn at the Price home. Appellant offered to dispose of the guns at a pawn shop. The next day they drove to Lexington; however, appellant declined to sell the guns but did sell the watch for $80 and gave the money to Saylor. Both of them then returned to Somerset, where they stayed three or four days before going back to Cincinnati. During their return trip to Cincinnati, Saylor said that he alone had gone to Slusher's grocery, after having (speaking in the vernacular of the underworld) "cased the joint;" that Slusher ordered him out and made a movement as if to get a gun; and that he (Saylor) shot him, then got scared and ran out. Saylor said he went back into the store to see if Slusher was dead and, upon finding that he was, he took some money and guns and again left, only to immediately return to get Slusher's watch. After the two of them returned to Cincinnati, at Saylor's request, he gave the guns to Jim Meredith. Appellant thus portrays the affair, as Saylor allegedly told it to him.

Janice Price testified that she lived in Chenoa, Bell County, Kentucky, and worked at the Pineville Hospital. She stated that on election day in November, 1974, appellant and Saylor came to her house and that some time later she, her mother, Saylor and appellant drove to Somerset, where they went to a shopping center, where appellant bought some clothes. The four of them then returned to her mother's home. Later Saylor and her mother drove back to Somerset, leaving the appellant and her at the house. Appellant took Janice to the barn and showed her five or six guns which had been hidden. He also showed her a gold pocket watch and confided in her that he had killed a person, but he did not tell her who it was or where it happened, only that it happened the prior day.

Floyd Randall testified that on November 7, 1974, appellant came to his home in Somerset and bought a .32-caliber pistol. While there, appellant showed him some guns, one which was an antique pistol.

Jay Randall testified that in November, 1974, he saw the appellant and Mitchell Saylor at his son's house. On that occasion he saw four or five guns in the trunk of their automobile. He identified one of the guns as an "old antique thing."

Luther Slusher, the victim's younger brother, visited with him about thirty minutes before his death. He verified his brother's ownership of a .22-caliber pistol, two rifles, a .55-M rifle, an antique gun, and a B.W. Raymond Elgin 21-jewel pocket watch, with a Simmons chain.

Charlie Rosenberg, a pawnbroker from Lexington, testified that on November 6, 1974, he bought such a pocket watch and chain from the appellant. It was stipulated that appellant signed the pawn receipt.

This thumbnail sketch of the testimony is sufficient for our consideration of the charges of error.

■ During the voir dire, counsel for appellant made three challenges for cause, each of which was denied by the trial judge. Counsel now contends that the court erred in not granting these three challenges for cause, and because it did not do so, it committed prejudicial error.

Mrs. Joe A. Bingham stated that she would be prejudiced because her father was killed when she was a very young child. Luther Maples stated that in his opinion the appellant had the burden of proving his innocence. Mr. Delbert James was a part-time city police court judge. All three of these prospective jurors were peremptorily stricken by the appellant. After the jury had been fully selected, the appellant still had five peremptory challenges remaining. In *Rigsby v. Commonwealth*, Ky., 495 S.W.2d 795 (1973), we said:

"Appellants complain of an abuse of discretion by the trial court in refusing certain challenges for cause. The argument is unavailing because nowhere do appellants assert they were forced to exhaust their peremptory challenges, nor

does examination of the record reveal such circumstance. All the jurors in question were removed by way of peremptory challenges. A defendant who fails to exhaust such challenges cannot complain concerning the jury selection. Certainly if the biased juror is not impanelled, no prejudice can result. There has been no showing that use of the eleven peremptories to dispose of the suspect jurors resulted in a subsequent inability to challenge additional unacceptable veniremen. Therefore, favorable consideration may not be given to appellants' assertions."

It appears that not only were the jurors who expressed bias not impaneled, but appellant had five remaining unused challenges. No prejudice resulted to the appellant.

Among other instructions given to the jury by the trial court, No. 2 instructed the jury as follows:

"If the Jury believe from the evidence in this case to the exclusion of a reasonable doubt that Billy Charles Lefevers in company with Mitchell Saylor went to the Store House of the deceased, John Slusher, with the intent to rob him of money or any other thing of value, and if you further believe that both Billy Charles Lefevers and Mitchell Saylor entered the Store together and was on the premises together for the purpose of carrying out this robbery, even if they did not intend to kill him when they went there, but he was killed as a result of a difficulty in robbing him by either Billy Charles Lefevers or Mitchell Saylor, then in that event it is immaterial which one fired the shots that killed him."

Objection was made to the giving of this instruction on the grounds that there is no evidence to warrant such an instruction or to support appellant's conviction thereunder. This is one of those cases where each of two persons charged with the commission of the crime placed the blame on the other. To believe Saylor would be to find that appellant, and he alone, did the killing and committed the robbery, and that he (Saylor)

only participated after the dastardly deeds had been done. On the other hand, appellant would have us believe that he was not involved with the murder-robbery scheme in any manner, even though he sold part of the merchandise to a Lexington pawnbroker, carried part of the loot in the trunk of his car for several days, displayed it to other persons, disposed of the guns by giving them to a mutual friend, Jim Meredith, and told at least one person that he had killed someone.

Should the jury choose to believe either version or should it choose to believe a combination of the two versions, there is clearly demonstrated a premeditated plan of murder and robbery. The jury was not compelled to believe the testimony of appellant, nor was it compelled to believe the testimony of Saylor. Under the evidence as a whole, it would not be clearly unreasonable for a jury to believe that both appellant and Saylor were in this scheme together. Instruction No. 2 was proper.

At the close of the Commonwealth's evidence, the appellant moved the court to direct a verdict of acquittal in his favor for the reason that the Commonwealth's witnesses, Janice Price and Mitchell Saylor, were both accomplices, without whose testimony there is no evidence tending to connect the appellant with the commission of the crime. At the conclusion of all the evidence, counsel for appellant renewed his motion "for a directed verdict of acquittal on the grounds that there is no evidence of guilt beyond a reasonable doubt that the defendant, Billy Charles Lefevers, committed the offense charged in the indictment."

In his brief appellant argues that the court failed to give an accomplice instruction as it would affect the testimony of Janice Price. Such an instruction was not asked for by appellant, nor was that proposition raised in his motion and grounds for a new trial. Thus, this matter was not preserved for appellate review. *Caslin v. Commonwealth*, Ky., 491 S.W.2d 832 (1973). As to who is an accomplice, in *Durham v. Commonwealth*, Ky., 398 S.W.2d 696 (1966), we said:

"It is our view that neither Alice Mills nor Helen Walls was an accomplice. The authorities cited by appellant and appellee teach that an accomplice is one who knowingly, voluntarily, and with common intent, unites with the principal in the perpetration of the crime, either by being present and joining in the criminal act, by aiding and abetting in its commission, or, if not present, by advising and encouraging the performance of the act. * * "

This definition of an accomplice was reaffirmed in *Dowdle v. Commonwealth*, Ky., 554 S.W.2d 92 (1977). Measured by this standard, Janice Price was not an accomplice. Even in the absence of Janice's testimony, there is sufficient evidence to uphold the verdict of the jury and the judgment entered thereon.

■ On voir dire, a prospective juror expressed as his opinion that the one who committed the foul acts ought to be severely punished. This brought forth an objection by counsel for appellant that the juror was prejudiced. There was no challenge made to the truth of the statement, nor could there be. Also, the court directed a question to counsel for appellant relating to the severity of the punishment. The court said, "Is there any question about that, Mr. Helton," to which counsel responded, "I raise the question, your Honor." This juror was stricken from the panel for cause. The court did not act in a manner prejudicial to the appellant in its dialogue relating to the perpetrator of these crimes being severely punished.

On October, 1, 1976, pursuant to the authority of RCr 7.24, counsel for appellant filed a pretrial discovery motion which sought, in part, to require the Commonwealth to furnish to appellant the following:

"1. Disclose any evidence known to the Commonwealth which would tend to exculpate the defendant or would bear upon the defendant's degree of punishment if convicted.

    \*    \*    \*    \*    \*    \*

7. Copies of any statements of the defendant, either in document or recorded form or copies of any documents or recordings which purports to contain any substantially verbatim statements made by him.

8. Copies of any statements of the codefendant, Mitchell Saylor, either in document or recorded form or copies of any documents or recordings which purports to contain any substantially verbatim statements made by him."

The motion was granted, and on October 18, 1976, the Commonwealth responded with the following answers:

"1. None.

    \*    \*    \*    \*    \*    \*

7. The defendant made no written or recorded statement; however, early in the investigation he was interviewed by Trooper Jerry Brewer.

8. Copy of the statement made by codefendant, Mitchell Saylor, has already been furnished the defendant's attorney."

On Friday, October 22, 1976, after the court had recessed the trial and excused the jury until the following Monday morning, October 25, counsel for appellant made objection to the use by the Commonwealth's Attorney of two handwritten, unsigned statements which were furnished to him at that time. One was a statement from the appellant and the other was a statement from the codefendant Saylor. Also, at the same time the name of a proposed Commonwealth witness, Margie Slusher, was furnished to counsel for appellant. Counsel was justly critical because the statements and the name of the proposed witness had not been timely given to him by the Commonwealth's Attorney. He claimed the appellant was prejudiced by the delay and moved the court for a mistrial, to set aside the jury, and to grant appellant a new trial, all of which were denied. Counsel for appellant then made a motion "that the Court not allow any testimony from the Commonwealth regarding this statement that they failed to furnish us. And that it not be permitted to be used in any manner to contradict any testimony given by the de-

fendant, Billy Lefevers, because the statement purports to be a report of a verbatim conversation had with Billy Lefevers by the officer who wrote the report." After considering the motion, the court responded, "The statements are unsigned; apparently not sworn to, and at this time it is premature to request the Court to rule on this Motion since it would pre-suppose that the defendant will take the stand and testify contrary to what's in the statements. The Court reserves its ruling until as of such time as it will become proper."

The transcript of testimony reflects that at no time while the appellant was testifying did the Commonwealth's Attorney interject or seek to interrogate him relative to the two statements. However, on redirect examination, the appellant testified that he had talked with Officer Brewer about the affair, but there was no mention made of such written statements. The two statements were written by Trooper Jerry Brewer, who testified as the second witness for the Commonwealth on October 20. No questions were asked of him at that time relative to these statements, nor did he comment on them.

The Commonwealth's Attorney should have furnished the two statements to counsel for appellant as soon as reasonably possible after he received them. However, the statements contained nothing vital or revealing. As a matter of fact, when the trial reconvened on Monday, Detective Brewer was recalled as if on cross-examination, and no interrogation was made of him relative to them. In addition, Saylor was available as a witness for Lefevers, but he was not called. Also, appellant testified subsequent to his counsel's receiving the statements, and he had full knowledge of what was contained in them. Counsel for appellant did not, after having had the weekend to study the statements, bring to the court's attention any manner of prejudice to the appellant, nor was a motion for a continuance then made. This error, if any there was, does not manifest any prejudice to the appellant. Regardless of whether the statements were used or whether the

Commonwealth's Attorney interrogated appellant or any other witness in regards to the contents of either of the statements, no objection to any such use is reflected by the record. If such statements were used, it became the duty of counsel for appellant to then and there make an objection. Having failed to do so, he cannot now complain. *Bell v. Commonwealth*, Ky., 473 S.W.2d 820 (1971).

As to the witness Margie Slusher, the record discloses that she was not called by the Commonwealth, but was called by the appellant as the last witness to testify. Certainly after having the weekend to interview the witness and calling her as a defense witness, there was no prejudice shown to appellant by the delay in furnishing her name to counsel for appellant.

The judgment is affirmed.

All concur.