Cleveland STEWART, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Dec. 9, 1977.

Rehearing Denied March 14, 1978.

Jack E. Farley, Public Defender, Edward C. Monahan, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., B. F. Radmacher, III, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

Appellant Cleveland Stewart was indicted by the Hopkins County Grand Jury on September 10, 1976, for the shotgun murder of Raymond Stone (KRS 507.020). The killing occurred late in the night of June 6 or early in the morning of June 7, 1976, in Nortonville, Kentucky. On November 19, 1976, following a two-day trial, the jury returned a verdict of guilty and fixed appellant's punishment at life imprisonment.

On this appeal appellant attempts to present eight issues, only one of which merits our consideration. The other seven issues are presented for the first time on this appeal. We have uniformly held, and we reiterate, that the question has not been properly preserved for appellate review when it is presented for the first time on appeal. *Lee v. Commonwealth,* Ky., 547 S.W.2d 792 (1977).

In *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977), we said, "If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." The trial judge, in measuring the evidence by this yardstick in order to determine whether a directed verdict of acquittal should be given, heard conflicting testimony. The evidence discloses, and the jury was entitled to believe, that appellant and his 17-year-old friend, Mike Lewis, on Friday evening, June 4, 1976, went to the home of Raymond Stone to buy some beer. Mr. Stone lived in a remote section of South Hopkins County, Kentucky. He had only two neighbors; one lived about 100 yards from him and the other about 250 yards from him. "Stoney" refused to sell any beer to appellant and Lewis, but he did give them several cans to drink while they were visiting with him. Neither of the men had any money, except for a small amount of change. After their visit appellant and Lewis returned to the car and, with appellant driving, killed the evening just riding around. While doing so, Lewis noticed a single-barrel, 12-gauge shotgun in the car, and he asked appellant to stop the car and let him shoot the gun a couple of times, which appellant did. The shells are a Smith and Wesson brand, with a silver-colored metallic butt end, a type not generally used or found in the vicinity. Appellant started talking about how Stoney had a lot of money and that he thought he would rob him. Appellant stopped the car about 100 yards from Stoney's, got out of the car and loaded the shotgun. Taking a few extra shells with him, he started walking toward Stoney's. Lewis remained in the car. After a short while Lewis, having

reconsidered their plight, moved into the driver's seat, turned the car around, and went after the appellant. After driving only a short distance, he overtook appellant, who got back into the car. They continued their carousing. Later in the evening appellant took Lewis home.

On the following day, Saturday, at about 5:00 or 6:00 p. m., the appellant, Lewis and Lewis' girlfriend drove back over to Stoney's for the ostensible purpose of getting some more beer, where appellant could buy it on credit, and in an effort to sell Lewis' 22-caliber rifle and appellant's 12-guage shotgun. The sales were not made, but again appellant started talking about how easy it would be to rob Stoney. The trio drove to Mushy's Tavern, in Mannington, Kentucky, where Lewis sold his rifle, but appellant was unable to sell his shotgun. Upon leaving Mannington, they all rode around together trying to find someone to buy appellant's shotgun until about midnight, when the parties disbanded.

An hour or two later appellant drove by Andy Vandiver's home and persuaded Andy to go with him to Evansville, Indiana, in another effort to sell his shotgun. While enroute to Evansville, appellant remarked that he had just shot a man, but he did not say who it was. It is well to mention at this point that three or four days later the appellant, Vandiver and Chuck McGregor were drinking together and in the course of their conversation appellant again said that he had shot a man. The appellant and Vandiver were arrested. While being held in jail, in August, 1976, the appellant told Vandiver that Raymond Stone was always talking about his mother and that he had shot Stoney and he wasn't sorry for it. Also, a week or so after the killing the appellant told his sister-in-law, Kathy Robertson, that he had shot a man but that the authorities thought someone else, Andy Vandiver, had done it.

The killing was investigated by several members of the Kentucky State Police and the sheriff of Hopkins County. They were unable to locate the shotgun, although, according to appellant, it had been sold while he was in Evansville. They were able, however, to locate four 12-gauge shotgun shells of the same make and description as the ones which Lewis fired from appellant's shotgun in his target practice. Two of the shells were recovered from the spot where Lewis had taken his target practice; one had been fired and the other had not. One shell was found about five miles from Stoney's residence and another, unfired, was found about thirty feet from his house at the edge of the driveway.

The victim, Raymond Stone, was shot from outside his home, at a distance of about twenty-five feet. The shot went through the front screen door and into Stoney's chest, heart and head. He was found lying in the front of the house between the bedroom and the living room. His wallet was empty and protruding from his hip pocket. No money was found in the house, and no beer or other intoxicants were found in the house. There were 208 cans of beer found outside the house, but close to it.

The measure of the adequacy of the evidence to overcome a motion for a directed verdict of acquittal is predicated on its quality. Appellant attacks his statements as if they were confessions, thereby requiring proof other than that the murder was committed. RCr 9.60. The Attorney General argues the statements are not confessions but merely admissions. A distinction between the two is set out in *Hawk v. Commonwealth,* 284 Ky. 217, 144 S.W.2d 496 (1940). We said:

"A confession is a voluntary statement made by a person in which he acknowledges himself to be guilty of an offense or discloses the existence of the act and the share or participation which he had in it. The distinction between a confession and an admission is that the latter is only a self-incriminating statement short of an acknowledgment of guilt, or a statement of an isolated or independent act tending only to show guilt or criminal intent."

In the instant case, the trial judge treated the statements as confessions. We concur. Even though we consider the statements to be confessions, it does not follow that they cannot suffice to establish appellant's guilt. The confessions may be sufficient where there is separate and corroborative evidence which will establish the corpus delicti. In *Wilson v. Commonwealth*, Ky., 476 S.W.2d 622 (1971), we said:

"The appellant contends that his confession was not sufficiently corroborated to sustain the conviction. RCr 9.60 provides:

'*Corroboration of Confession.* A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such an offense was committed.'

The only corroboration required for a confession not made in open court is proof, independent of the confession, that the offense was actually committed. Once the commission of the offense is established, the confession alone is sufficient proof that the confessor committed the crime."

Although there is testimony that appellant confessed to the killing of Raymond Stone, the prosecution was required to show (1) a death and (2) that the death resulted from the criminal agency of another." In addition to the confession, the evidence, which clearly establishes the corpus delicti, demonstrates that, (1) Raymond Stone is dead as a result of a shotgun wound which caused massive hemorrhage of the muscle walls around the heart, chest and head; (2) the weapon which caused his death was fired from outside his residence from a distance of about twenty-five feet; (3) the pellets from the shotgun shell not only went through the closed screen door but through a partially opened main door and a glass window; (4) one unexpended shell was found on the edge of the driveway of the victim's home; (5) two shells, one of which had been fired by Mike Lewis, were found about two-thirds mile away; (6) one unexpended shell was found about five miles from the Stone residence; (7) all of these shells are of the same make (Smith and Wesson) and gauge (12); (8) all of these shells are of the same type and gauge as those fired from appellant's shotgun while he and Lewis were target practicing; (9) all of these shells are of a type of construction not usually found in that vicinity; and (10) death was caused by a person other than the victim. It can hardly be argued that the victim took his own life.

We are of the opinion that there is adequate evidence corroborating appellant's confessions to justify the submission to the jury.

The judgment is affirmed.

All concur.