Terrell Lynn **HENDLEY**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

Supreme Court of Kentucky.

Oct. 31, 1978.

Jack E. Farley, Public Advocate, Rodney McDaniel, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On April 1, 1977, the Simpson County Grand Jury returned two indictments against the appellant; one charged him with first-degree arson (KRS 513.020(1)) and the other charged him with two counts of murder (KRS 507.020(1)(b)), to all of which the appellant pled not guilty. A two-day trial resulted in the appellant's being found guilty of arson in the third degree and two counts of manslaughter in the second degree. His punishment was fixed at five years' imprisonment on the arson charge and ten years' each on the manslaughter charges. The three sentences were ordered to run consecutively.

The evidence discloses that at or about 3:00 or 3:30 a. m. on March 27, 1977, an apartment building in which the appellant's girl friend resided was intentionally burned by the appellant, causing the death of two persons. The fire started from a burning bush at ground level, at a back outside corner of the apartment, about 24 inches from the house. The appellant was interro-

gated on several occasions. On the day of the fire, at about 3:00 p. m., after having been warned of his *Miranda* rights, the appellant expressed a willingness to talk to his interrogator. He was questioned off and on for about two hours. He stated that he had not been at the site of the fire until after the fire had started. On the following day, March 28, after again having been advised of his *Miranda* rights, the appellant again was interrogated; this time for a period of three hours, which included the time necessary for him to receive a polygraph examination. All of the interrogation was placed on a tape recorder. After the interrogation, the appellant gave a four-page voluntary statement in question and answer form.

The appellant stated that during the early hours of Sunday, March 27, 1977, he saw his former girl friend with another fellow at a "Discotheque"; that he left and went to his sister's house, where he used the phone to call his girl friend's apartment; that when he was unable to talk with her on the phone he went to her apartment, tied a rag around a rock, and threw it through a window; and that he then fired a bush, which was on the outside corner of the apartment building, and left. The appellant expressed regret for the fire and the deaths.

After the statement was completed, the appellant and his inquisitor read it, and then made several minor changes at the direction of the appellant.

The witnesses for the Commonwealth who attended the appellant during the time of his arrest stated that at no time did the appellant request a lawyer. However, the appellant stated that he did ask for a lawyer several times, but was refused one and was told that he did not need a lawyer.

■ On this appeal the appellant argues five alleged errors. First, he contends that the evidence is insufficient to sustain the verdicts of guilty since, allegedly, they are based solely on the appellant's uncorroborated confession. Counsel for the appellant argues this issue in generalities.

RCr 9.60 provides:

"A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such an offense was committed."

We have examined the transcript of testimony carefully in an effort to determine whether, apart from the appellant's testimony at the trial and apart from his confession made to the officer, the evidence is sufficient to establish the corpus delicti and sustain the verdicts. We are of the opinion that it does. The evidence establishes unequivocally that:

1. The appellant and Gwen Hammond had been going together, but at the time of the fire they were not getting along too well.
2. Gwen saw the appellant around her apartment between 3:00 and 3:30 a. m. on the morning of the fire.
3. Jeffrey Hall saw the appellant in close proximity to the apartment building on the morning of Sunday, March 27, 1977, shortly prior to the fire.
4. The apartment house in which Gwen lived burned.
5. The fire started from a bush which was deliberately set afire. The bush was just outside of and within 24 inches of the apartment building.
6. The fire destroyed the building and killed two persons.
7. The fire was not of accidental origin, but was deliberately set.
8. The fire was reported to the fire department at about 3:40 or 3:45 a. m.

The appellant contends that the Commonwealth failed to establish the corpus delicti. In addressing this matter in *Stewart v. Commonwealth,* Ky., 561 S.W.2d 660 (1977), we said that the prosecution was required to show (1) a death and (2) that the death resulted from the criminal agency of another, thus establishing the corpus delicti, more recently referred to as the "body of the crime."

*Crabtree v. Commonwealth,* 260 Ky. 575, 86 S.W.2d 301, 304 (1935), cited by counsel for the appellant, discussed the elements necessary to establish the corpus delicti. We said:

"* * * We deem it not sufficient for establishing the criminal act of its having been maliciously burned to merely show circumstances attending its burning, which in themselves fail to show a cause therefor. * * *"

However, therein we stated, "There was no evidence that the appellant or any strangers were about the barn during the day or shortly before its burning was discovered that evening."

■ In the case at bar there is the testimony of two witnesses who place the appellant at or in very close proximity to the apartment shortly prior to the fire. Clearly, there is established (1) the burning of the building and deaths from the burning, (2) the fire was caused by having been deliberately set, and (3) the deaths were caused by a criminal act. Counsel for appellant vigorously argues that the only evidence connecting the appellant with the commission of the crimes, other than his confession, is circumstantial. It can hardly be contended by the appellant that he can be found to be the guilty culprit only if he is actually seen igniting the fire. Arsonists don't work that way. Such arguments fail in the face of *Hines v. Commonwealth,* Ky., 390 S.W.2d 152 (1965). Circumstantial evidence may be considered by the court when weighing the quality of the evidence to establish the body of the crime. *Perry v. Commonwealth,* Ky., 514 S.W.2d 202 (1974); *Peace v. Commonwealth,* Ky., 489 S.W.2d 519 (1973).

The corpus delicti was established beyond cavil. We are of the opinion, even excluding the appellant's testimony and his confession, that from the remaining evidence as a whole it would not be clearly unreasonable for a jury to find the appellant guilty. *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977).

■ Next, the appellant argues that his confession was not made voluntarily and was given without the benefit of requested counsel; consequently, it should not have been disclosed to the jury. The criterion by which we have long been guided is that a confession, in order to be admissible, must be free and voluntary; that is, it must not be extracted by any sort of violence or threats. *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

KRS 422.110 provides:

"Confession obtained by 'sweating' not admissible.

(1) No peace officer, or other person having lawful custody of any person charged with crime, shall attempt to obtain information from the accused concerning his connection with or knowledge of crime by plying him with questions, or extort information to be used against him on his trial by threats or other wrongful means, nor shall the person having custody of the accused permit any other person to do so.

(2) A confession obtained by methods prohibited by subsection (1) is not admissible as evidence of guilt in any court. The trial judge shall determine the competency and admissibility of any alleged confession under the provisions of this section from evidence heard by him, independent of and without the hearing of the jury trying the case."

Although no hearing separate and apart from the trial to determine the voluntariness of the confession was requested by the appellant or given by the court, the trial judge did hear the facts which preceded the confession and which, the appellant argues, brought forth the confession. After considering these facts and viewing the giving of the confession, the court determined that the confession was proper and permitted it to be introduced into evidence and read to the jury.

We must determine whether the findings of the trial court resulting in the admission were clearly erroneous. *Hayden v. Commonwealth,* Ky., 563 S.W.2d 720 (1978). The trial judge said:

"I am going to rule, I am going to sustain the Commonwealth's position and I am going to rule that reference to this three page statement be permitted and ruled as competent. The fact of establishing oppression by the time or the length of an examination or the treatment of this statement is not the only criteria, such other elements as confusion and force and bewilderment resulting from excessive would be a better way to look at it and none has been shown to the Court. I think it is a matter of discretion at this point. The competency of the matter as I see it would be confined rather than have this record proliferate into unbounded confusion to the statement that I hold here which will be introduced, the statement that was taken on the 28th of March 1977, overruling the objection of the Defendant."

Some six or seven hours after the fire the appellant voluntarily accompanied Officer Booher to the courthouse where he was questioned. He was first questioned for about two hours, and later in the same day he was questioned again for a short time until he stated that he didn't wish to make any further statements at that time. The appellant did agree to take a polygraph examination. The interrogation ceased, and the appellant was kept in jail overnight. The following morning he was taken to Madisonville, Kentucky, for the polygraph test. After three hours of off and on questioning, which included the making of the polygraph test, the appellant voluntarily made the subject question-and-answer confession. The appellant's feeble effort at showing coercion is demonstrated by the following answer he made in response to a question by his attorney:

"Q. 101. Why did you sign the statement?

A. Due to the fact that I took the polygraph test, the first part and the second part. The questions like every time we get through taking the test you know, the first part of the test, he would go out of the office, go out of his office and go into another office. So every time he up I would get up too also and I would go to the hallway to my coat and get a cigarette and smoke and at the time, you know, he would come back in so I know that when he come back in I knowed that he would have to be consulting with somebody else because the information he have, you know, that I know he would have to know it himself, you know."

Giving a reasonable interpretation to what the appellant said concerning his coercion, we fail to find that he was overreached in any respect. It does not appear that the action of the trial judge in admitting the confession was erroneous.

The appellant next argues that the trial court erred in permitting the Commonwealth to use a statement which resulted from a previous statement made by the appellant and which was not disclosed to the appellant.

The polygraph test and the questioning of the appellant were all done on a tape recorder. Pursuant to RCr 7.24, the trial judge ordered the Commonwealth to furnish the appellant "Any statement or confession made by the accused and the reports of any physical or mental examination, scientific tests or experiments known to the Commonwealth for the purpose of inspection and copying by the defense," and "Any books, papers, documents or tangible objects or copies or portions thereof that are in the possession, custody, or control of the Commonwealth for inspection and copying by the defense."

Subsequent to the interrogation, the appellant made a full confession which, the Commonwealth contends, negated the need to keep the records and the tapes which were used for recording other different interrogations. The appellant complains, and justly so, that he was not furnished with the tapes on which these proceedings were recorded. Counsel for the Commonwealth contends that since the appellant had confessed to the act which resulted in the burning and the deaths, there was no further need for the tapes, so for the sake of econo-

my they were erased and used in other proceedings. The economy of using the same tapes over and over and over does not justify the failure to keep them until the case had been completely litigated, thereby affording the appellant the privilege of using them if he so desired, subject to their competency and relevancy being tested by the trial court. The appellant desired to use the tapes, but could not because they had been erased.

In *Lefevers v. Commonwealth*, Ky., 558 S.W.2d 585, 590 (1977), we said, "The Commonwealth's Attorney should have furnished the two statements to counsel for appellant as soon as reasonably possible after he received them." The interrogation of appellant was subject to proper inquiry and the tapes on which the questions and answers were recorded were likewise the proper subject of inquiry. This court cannot overemphasize the importance of not only retaining such evidence, but of promptly making it available to counsel for the accused when requested and if it is in existence. However, in *Gaston v. Commonwealth*, Ky., 545 S.W.2d 941 (1977), we said:

"* * * It should be recognized, however, that there is no principle of law telling a police department what it must or must not do with records of this kind. In fact, it is not compelled to keep them at all. Not until a motion is made under RCr 7.26 does a defendant become entitled to see the witness's statement, and he can be so entitled only if the statement is still in existence. At that point, and only at that point, the right of the police department to do with it as it will ceases."

RCr 7.24(1) authorizes the defendant "to inspect and copy or photograph any relevant (a) written or recorded statements or confessions made by the defendant, or copies thereof, that are known by the attorney for the commonwealth to be in the possession, custody or control of the commonwealth, and (b) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof,

that are known by the attorney for the commonwealth to be in the possession, custody or control of the commonwealth."

■ Not having been furnished the tapes, the appellant argues that his confession should not have been used. The tapes, regrettably, were not in existence, consequently, could not have been furnished to appellant. The court did not err in admitting the appellant's confession.

■ The appellant further argues that the trial court erred in refusing to order the Commonwealth to disclose the complete contents of the statement which the appellant made on the day of the fire.

The fire took place on March 27, 1977, and the Commonwealth's Attorney, Honorable R. Lee Steers, Jr., stated that he used a tape recorder for making notes and memoranda of his investigation and that the same tape recorder was used for recording the interrogation of the appellant. He further stated that in transcribing the recording the first seven pages were of the notes and memoranda which he had made for his own use and thereafter followed the transcript of the interrogation. Appellant was not furnished a transcript of the first seven pages. The appellant cites RCr 7.24(1) and RCr 7.26(2) as authority for his right to see and copy from these seven pages. He does not contend, however, that he was entitled to the notes that the Commonwealth's Attorney made for his own use during his investigation. The appellant argues that the trial judge should have, but did not examine them in order to determine whether they contained only the privileged entries or whether any of the seven pages contained matters which were properly discoverable. In his brief counsel for appellant states, "The record does not indicate that the trial judge ruled that the defense had all it was entitled to." Counsel is careful not to say, without equivocation, that the trial judge did not in truth and in fact actually inspect the first seven pages. On the other hand, the Attorney General convincingly argues that the trial judge did examine the seven pages and properly denied the appellant's request to examine, inspect or copy them.

We are of the opinion that the record reflects that the trial judge did in truth and in fact examine the seven pages. We do not find that he acted erroneously in denying the appellant's request.

 Last, but by no means least, the appellant argues that it was error for the trial court to order his sentences to run consecutively so that the aggregate exceeds the highest sentence that could be imposed for a Class C felony.

The appellant was convicted of arson in the third degree and sentenced to five years in prison. He was also convicted on two counts of manslaughter and sentenced to ten years in prison on each count. The three sentences were ordered to run consecutively, which would result in the appellant's facing an aggregate period of 25 years in prison.

KRS 532.110(1)(c) provides:

"(1) When multiple sentences of imprisonment are imposed on a defendant for more than one crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, such multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that:

(c) The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.-080 for the highest class of crime for which any of the sentences is imposed."

The highest class of crime for which sentence was imposed upon the appellant was second-degree manslaughter, a Class C felony (KRS 507.040(2)). KRS 532.080(6)(b) limits the appellant's sentence to no more than 20 years, instead of the 25 years under which he now labors. Thus, the appellant faces five years of imprisonment more than that to which he could be legally sentenced.

This case is remanded to the Simpson Circuit Court, where the court will sentence the appellant to imprisonment for a period of years not to exceed that provided by law.

All concur except STEPHENSON, J., who concurs in result only.