**Aldean HENDERSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

July 6, 1982.

Rehearing Denied Aug. 31, 1982.

Jack Emory Farley, Public Advocate, Edward C. Monahan, Asst. Public Advocate, Frankfort, for appellant.

Aldean Henderson, pro se.

Steven L. Beshear, Atty. Gen., Carl Miller, Asst. Atty. Gen., Frankfort, for appellee.

O'HARA, Justice.

This case comes before us as a matter-of-right appeal by Aldean Henderson on a four count indictment charging him with robbery in the first degree, burglary in the first degree, sexual abuse in the first degree, and being a first degree persistent felony offender. After a bifurcated jury trial, the Appellant was sentenced, on the jury's recommendation, to concurrent terms of life, life and twenty (20) years, respectively.

From this conviction review is sought in which the public advocate notices thirteen errors allegedly occurring in the trial.[1] We have considered the multiple urgings of the Appellant as set out in both the public advocate's briefs and the briefs filed *pro se*, and find only those discussed in this opinion as having any merit.

The pertinent facts of this case are as follows: On December 12, 1979, the Appellant and a co-conspirator[2] knocked on the apartment door of Leroy Barnes, stuck a gun in his face and forced their way into the house. Unlike his co-conspirator, Appellant made no attempt to conceal his identity. After ransacking the first floor of the apartment, Appellant went upstairs where he found Regina Garth in bed with her infant child. She was told to wrap her naked body in a sheet and accompany the Appellant downstairs, where she observed Leroy Barnes lying face down on the floor. Leaving Ms. Garth downstairs, the Appellant went back upstairs where he ransacked the area, apparently looking for something. Returning downstairs for a second time, he ordered Ms. Garth upstairs to the bedroom where he forced her to lie, naked, on the bed. Ms. Garth, who was pregnant at the time, protested, but Appellant nonetheless forced her to raise her leg, whereupon he inserted his finger into her vagina and sucked on her breast. Finally, Appellant ordered her to put the sheet around her, then took her back downstairs where he tied her up. After collecting various items of personal property belonging to the victims, the two men left the apartment. From the testimony at trial, it appears that the two men were originally searching for "dope."

---

1. It is the opinion of this author, even in my short stay on the court, that the briefs of the public advocate often project an image of what can only be called "boilerplate" (i.e. the errors are the same, only the names and dates have been changed to protect the innocent). This practice cannot achieve justice in its total sense, and serves primarily to obscure relevant, pertinent and tenable arguments. It is hoped that a word to the wise would be sufficient.

2. Appellant's co-conspirator was still at large on the date of the trial.

The first argument meriting discussion is the Appellant's expressed dissatisfaction with his assigned counsel, first noted at the inception of the trial. Although this dissatisfaction is described in the record in a variety of terms, it can be synopsized in the Appellant's own words: "He never told me nothing." After hearing and evaluating the Appellant's protests, the trial court concluded that "You seem to be more concerned with what he tells you, and not what he actually does."

The trial began, and the record clearly reflects that Appellant's counsel was active, alert, imaginative and resourceful. He conducted an active voir dire; made a logical opening statement; made numerous timely objections, many of which were sustained; made a motion to test the legality of the arrest; conducted thorough cross-examination of all witnesses; and made a motion for directed verdict of acquittal at the close of the Commonwealth's case. For the Appellant's case, his counsel called two available defense witnesses,[3] as well as putting the Appellant himself on the stand. Defense counsel presented the defense of alibi to the jury, utilizing the testimony of the Appellant, his mother, and the local probation and parole officer. At the close of the Appellant's case, counsel again renewed his motion for a directed verdict of acquittal. Closing argument was substantial (in light of the overwhelming evidence), and the jury was polled after the verdict was rendered. Post-trial motions for a new trial and a judgment notwithstanding the verdict were timely filed. During the PFO portion of the trial, counsel was again most aggressive, including but not limited to preserving the record on appeal.

■ In reaching a decision on the merits of Appellant's ineffective assistance of counsel argument, we have been urged to reconsider the holdings of *Wahl v. Commonwealth*, Ky., 396 S.W.2d 774 (1965) and *Vaughan v. Commonwealth*, Ky., 505 S.W.2d 768 (1974). In both *Wahl* and *Vau-*

*ghan*, we held the test required to show ineffective assistance of counsel was "that the circumstances of the representation were such as to shock the conscience of the court and to render the proceedings a farce and mockery of justice." After a thorough reevaluation of the law in this area, we are of the opinion that the time has come to rid ourselves of the "shock the conscience of the court" and "farce and mockery of justice" test. We now adopt the more logical test of *Beasley v. U. S.*, 491 F.2d 687 (6th Cir. 1974) wherein it was held "that the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance." Any inconsistent holdings such as those expressed in *Wahl* and *Vaughan*, supra, are hereby expressly overruled.

■ In the instant case, Appellant's complaint as previously alluded to was one of quantity of defense, completely disregarding the quality of the representation. In *Daugherty v. Runner*, Ky.App., 581 S.W.2d 12, our Court of Appeals, citing Prosser, Law of Torts, § 32 at 161–66 (4th ed. 1971) held:

"In determining whether that degree of care and skill exercised by the attorney in a given case meets the requirements of the standard of care aforementioned, the attorney's act, or failure to act, is judged by the degree of its departure from the *quality* of professional conduct customarily provided by members of the legal profession." (Emphasis added).

Having adopted the *Beasley* test, supra, we conclude that as an adequate standard the defense counsel should be required to perform at least as well as a lawyer with ordinary training and skill in criminal law, utilizing that degree of training to conscientiously protect his client's interests.

■ In the opinion of this court, it is beyond question that the quality of profes-

**3.** The record also reflects that defense counsel sent a detective and the Appellant's mother to get the Appellant's sister from school to testify in his behalf. The sister refused to come and testify.

sional representation rendered in this case was reasonably effective.[4]

As to Appellant's contention that he was by right entitled to new counsel upon the grounds that he found his counsel to be ineffective, we reiterate that a defendant who is represented by a public defender or appointed counsel does not have a constitutional right to be represented by any particular attorney, and is not entitled to the dismissal of his counsel and the appointment of substitute counsel except for adequate reasons or a clear abuse by counsel. See *Baker v. Commonwealth*, Ky.App., 574 S.W.2d 325 (1978); *Fultz v. Commonwealth*, Ky., 398 S.W.2d 881 (1966). No adequate reasons or abuse by counsel are demonstrated in the Appellant's case. His efforts appear to be no more than an attempt to delay the proceedings against him, and the trial court properly utilized its discretion in this case by refusing Appellant substitute counsel.

Appellant's second argument that merits attention is the alleged impropriety of permitting the amendment of the persistent felony offender count of the indictment. The indictment as *originally* returned charged the Appellant with being a persistent felony offender in the first degree. The *amended* indictment also charged the Appellant with being a persistent felony offender in the first degree, the only difference being the addition of six additional convictions to be used as evidence in the Commonwealth's case.

Appellant contends that the additional elements as set out in the amended indictment were a violation of RCr 6.16. Such contention squarely misinterprets the entire purpose of the rule. RCr 6.16 provides:

"The court may permit an indictment . . . to be amended at any time before verdict or finding if *no additional or different offense* is charged and if substantial rights of the defendant are not prejudiced. If justice requires, however, the court shall grant the defendant a continuance when such an amendment is permitted." (Emphasis added).

It is obvious from the facts that the only "offense" charged in the fourth count of both the original and amended indictment is that of charging the Appellant of being a persistent felony offender in the first degree. The amendment to the indictment served only to list additional previous crimes which were used to amplify the proof supporting the offense charged.

As to the trial court's refusal to grant a continuance, there is evidence in the record that Appellant's counsel knew that additional previous convictions would be introduced at least several hours (and perhaps a full day) in advance of the amendment to the indictment. Nor can the Appellant claim any solace in arguing prejudice since the evidence in this case on the principal offense clearly showed that the Appellant and his counsel well knew that he had been paroled on December 5, 1979, one week before the commission of these offenses. The trial court, in its discretion, ruled that under these circumstances, justice did not require a continuance. We agree and conclude that with the inclusion of the additional evidence, the Commonwealth has met its burden of proof under the persistent felony offender statute. KRS 532.080.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.

---

4. Furthermore, there is not one iota of substance to the conclusion that counsel was not ready, willing and able to proceed. He so announced and the trial court clearly ascertained that such was counsel's posture. Even the prosecutor verified this determination, a concession rarely made during a trial.