**Derryl D. BLANE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000713–MR.

Supreme Court of Kentucky.

April 26, 2012.

Emily Holt Rhorer, Molly Mattingly, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Perry Thomas Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

A Christian Circuit Court jury found Appellant, Derryl Dewayne Blane, guilty of two counts of first-degree trafficking in a controlled substance (cocaine); one count of trafficking in marijuana, eight ounces or more; one count of possession of drug paraphernalia, second or subsequent offense; and of being a first-degree Persistent Felony Offender (PFO). For these crimes, Appellant received a thirty-year prison sentence.

He now appeals as a matter of right, Ky. Const. § 110(2)(b), alleging that the trial court (1) erroneously denied his motion to suppress, (2) erroneously denied his *Batson* motion, (3) erroneously permitted the Commonwealth to amend the indictment after granting a directed verdict of acquittal on the marijuana charge, (4) erroneously admitted testimony during the penalty phase concerning prior charges of which he had not been convicted, (5) erroneously imposed a thirty-year sentence, (6) that his

conviction as a first-degree PFO is invalid as to Count 1 of the indictment, and (7) that he should be permitted to request retroactive application of the amended penalty for possession of drug paraphernalia.

## I. BACKGROUND

On June 27, 2006, the Hopkinsville Police Department's (HPD) Special Investigations Unit set up a controlled narcotics purchase from Appellant at his home. HPD sent a confidential informant, Jason Alexander, equipped with a camera, audio monitoring device, and documented money, to purchase crack cocaine from Appellant. Jason went to Appellant's home and purchased two rocks of crack cocaine from him for twenty dollars.

On May 17, 2007, HPD sent another confidential informant—this time Jason's wife, Connie Alexander—to purchase drugs from Appellant.[1] HPD equipped Connie with an audio recorder, transmitter, and forty dollars in documented money. Connie went to Appellant's home where she bought two rocks of crack cocaine for forty dollars. This is the only time Connie ever served as a confidential informant on a controlled purchase for HPD.

Connie's purchase served as the probable cause basis for a search warrant issued later that day, and executed the next morning at Appellant's home. The search yielded $11,452.74 in cash, approximately fifteen and one-half grams of crack cocaine, and approximately two pounds and thirteen ounces of marijuana.

Appellant was charged by information in Christian Circuit Court with two counts of first-degree trafficking in a controlled sub-

---

1. Appellant was not arrested immediately following the June 2006 controlled purchase be- cause there was an ongoing investigation.

stance (cocaine), trafficking in marijuana within 1,000 yards of a school, and possession of drug paraphernalia, second or subsequent offense. He was later indicted by a grand jury for first-degree PFO.

At the close of the Commonwealth's case-in-chief, Appellant moved for a directed verdict on the charge of trafficking in marijuana within 1,000 yards of a school. Because the Commonwealth had introduced no evidence with respect to Appellant's home being within 1,000 yards of a school, the trial court indicated that it was going to "in essence" grant Appellant's motion for a directed verdict on this count. However, the court then granted the Commonwealth's motion to amend Count 3 of the indictment from trafficking in marijuana within 1,000 yards of a school to trafficking in marijuana, eight ounces or more.

The jury found Appellant guilty of the three underlying charges, and recommended the maximum sentences for each conviction. The Commonwealth then called a deputy circuit clerk to testify as to Appellant's prior convictions to establish his PFO status. Specifically, the Commonwealth elicited testimony from the clerk regarding two separate prior incidents involving Appellant. With respect to both incidents, the clerk testified as to the original charges and the charges as amended.[2] Ultimately, the jury convicted Appellant of being a first-degree PFO. Accordingly, the jury recommended enhanced sentences of fifteen years on both cocaine trafficking counts, an enhanced sentence of fifteen years on the marijuana trafficking count, and a five-year sentence on the possession of drug paraphernalia

count. The jury further recommended that the sentences for the two trafficking in cocaine counts be served consecutively, and the sentences for the trafficking in marijuana count and the possession of drug paraphernalia count to be served concurrently, for a total sentence of thirty years' imprisonment. Additional facts will be provided where necessary.

## II. ANALYSIS

Appellant sets forth seven separate arguments: one alleging error in the investigation, one alleging error in voir dire, one alleging mid-trial error, and four concerning the penalty phase of his trial. We will discuss them in that order.

### A. Suppression of Evidence

Appellant argues that the trial court erroneously denied his motion to suppress the evidence collected at his home during the execution of the search warrant. He alleges that the affidavit in support of the search warrant contained false and misleading information, and therefore was issued in violation of his rights under the United States and Kentucky Constitutions. Specifically, he contends that the HPD officer's description of the confidential informant for the May 17, 2007 controlled buy as "reliable" was false and misleading.

▮▮▮ The Fourth Amendment to the United States Constitution states, in relevant part, that "... no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and

---

**2.** The first incident involved a 2001 indictment in which Appellant was originally charged with trafficking in a controlled substance and trafficking in marijuana, amended to possession of a controlled substance and possession of marijuana (for which he was convicted). The second incident involved a

2006 case in which Appellant was originally charged with trafficking in a controlled substance and trafficking in marijuana, but the charges were again amended to possession of a controlled substance and possession of marijuana (for which he was convicted).

the persons or things to be seized."[3] *See also* Ky. Const. § 10 (stating, in relevant part, that "no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation"). In *Franks v. Delaware,* the United States Supreme Court noted:

> "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

438 U.S. 154, 164–65, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (quoting *United States v. Halsey,* 257 F.Supp. 1002, 1005 (S.D.N.Y.1966)). Moreover, "[i]f an informant's tip is the source of information, the affidavit must recite 'some of the underlying circumstances from which the informant concluded' that relevant evidence might be discovered, and 'some of the underlying circumstances from which the officer concluded that the informant ... was "credible" or his information "reliable." ' " *Id.* at 165, 98 S.Ct. 2674 (quoting *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)).

■ When an affidavit supporting a search warrant is challenged, it is presumptively valid. *Id.* at 171, 98 S.Ct. 2674.

The challenger must allege deliberate falsehood or reckless disregard for the truth, "and those allegations must be accompanied by an offer of proof." *Id.* If the challenger establishes this by a preponderance of the evidence, "and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156, 98 S.Ct. 2674.

■ On appeal, we engage in a two-step analytical review. "First, [we] review the factual findings of the circuit judge to see if they are supported by substantial evidence, RCr 9.78, and then review the ruling on the motion to suppress *de novo* to see whether the decision was correct as a matter of law." *Commonwealth v. Pride,* 302 S.W.3d 43, 49 (Ky.2010) (citing *Ornelas v. United States,* 517 U.S. 690, 698–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). However, "[i]n doing so, all reviewing courts must give great deference to the warrant-issuing judge's decision." *Id.* (citing *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

### *1. The trial court's factual findings are supported by substantial evidence.*

■ With respect to the first step, the trial judge ruled from the bench that the affidavit's description of the informant as "reliable" did not rise to the level of a *Franks* issue and therefore denied Appellant's motion. This appears to be the extent of his "factual findings" on the record. Implicitly, though, this means that the trial judge found that the affiant's assertion that the confidential informant was "reliable" was not a deliberate falsehood,

---

3. The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

or made with reckless disregard for the truth.

The affidavit states, in relevant part, that "Affiant received information from/observed a reliable confidential informant that she had made a successful controlled purchase of crack cocaine at [Appellant's address]." The officer corroborated this evidence by "[l]isten[ing] to the audio of the buy and confirm[ing] that a controlled purchase had occurred, field test[ing] the drugs and confirm[ing] the location of the buy as described by the C.I."

Appellant contends that the "reliable" status assigned to the confidential informant was deliberately or recklessly false or misleading because this was the first and only time that Connie Alexander was used as a confidential informant in a controlled buy. Reliability, Appellant contends, implies a pattern of behavior or history; according to him, reliability cannot be established by the mere fact that she was reliable in this case alone. We disagree.

The confidential informant told HPD that she could purchase cocaine from Appellant. On the day of the purchase she went to the police station and met with an HPD officer who searched her person, while another officer searched her vehicle. No drugs were found. An officer equipped the informant with an audio recorder and transmission device. She was given forty dollars with which to purchase drugs.[4] She then drove to Appellant's residence which police officers watched her enter. The officers heard her ask to purchase "a forty" from Appellant, for which

she was given two rocks of crack cocaine that she placed in her shirt pocket. She then went to the police station where she surrendered the drugs and was searched again. She told the officers that she had purchased the drugs, which had tested positive for cocaine, from Appellant.

In short, the informant told the officer that she could purchase drugs from Appellant, and that proved to be true. In other words, the informant proved to be *reliable*, and that is supported by substantial evidence. *See Taylor v. Commonwealth*, 987 S.W.2d 302, 305 (Ky.1998) (concluding that findings of trial court with respect to its denial of a motion to suppress were supported by substantial evidence when "the very specific information from the informer which was confirmed in every detail by independent police observation, reasonably led the police to believe that the tip was sufficiently truthful and reliable to justify" a vehicle stop). Some of that evidence was detailed in the affidavit itself as required by *Franks*, 438 U.S. at 165, 98 S.Ct. 2674. Moreover, the affidavit includes "some of the underlying circumstances from which the officer concluded that the informant . . . was credible or [her] information reliable."[5] *Franks*, 438 U.S. at 165, 98 S.Ct. 2674 (internal quotation marks omitted). Thus, we cannot conclude that the officer's sworn affidavit was deliberately or recklessly misleading, or that the trial court's decision was not otherwise supported by substantial evidence.

**2. The ruling on the motion was correct as a matter of law.**

4. This was given to the informant in the form of two twenty-dollar bills which had been photocopied.

5. As noted, the affidavit asserted that the informant had made a successful controlled purchase of crack cocaine at the address pro-

vided in the affidavit, that the officer had listened to the audio of the purchase, that he had confirmed that a controlled purchase had occurred, that the drugs had been field tested, and that the location of the purchase as described by the informant had been confirmed.

As the second step in our appellate review, we must conduct a *de novo* review of the ruling on the motion to suppress to determine whether it was correct as a matter of law. *Pride*, 302 S.W.3d at 49. To make this determination, we apply the "totality of the circumstances" test developed by the U.S. Supreme Court in *Gates*. *Pride*, 302 S.W.3d at 48.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317. It is clear that in this case, the trial court had a substantial basis for its conclusion.

As noted above, the affidavit stated that the officer received information from "a reliable confidential informant that she had made a successful controlled purchase of crack cocaine at [Appellant's address]." The affidavit further states that the swearing officer "[l]istened to the audio of the buy and confirmed that a controlled purchase had occurred, field tested the drugs and confirmed the location of the buy as described by the [informant]." This information provides a substantial basis upon which a trial court could conclude that there was "a fair probability that contraband or evidence of a crime [would] be found" at Appellant's residence. *Id.* at 238, 103 S.Ct. 2317. Thus, we conclude that the trial court's ruling on Appellant's motion was correct as a matter of law. *See Lovett v. Commonwealth*, 103 S.W.3d 72, 78 (Ky.2003) (holding that "while a court may question an informant's motives, an 'explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [the informant's] tip to greater weight than might otherwise be the case' " (quoting *Gates*, 462 U.S. at 234, 103 S.Ct. 2317)).

## B. Appellant's *Batson* Challenge

Appellant next argues that the trial court erred when it denied his *Batson* motion which objected to the removal of Reginald Dooley, an African American, from the jury pool. Appellant contends that the Commonwealth's striking of Dooley from the venire constituted racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. *See Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (declaring that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant").

Claims of racial discrimination in jury selection are analyzed in a three-step process. *Id.* at 96–98, 106 S.Ct. 1712. First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race. *Id.* at 96, 106 S.Ct. 1712. The defendant does this by: (1) "show[ing] that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race"; (2) "rely[ing] on the fact . . . that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate' "; and (3) showing "that these

facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.* (internal citations omitted). Second, once a prima facie showing is made, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Id.* at 97, 106 S.Ct. 1712. Finally, the trial court must then determine if the defendant has established purposeful discrimination. *Id.* The trial court's determination is afforded great deference and will only be overturned if clearly erroneous. *Harris v. Commonwealth*, 134 S.W.3d 603, 612 (Ky. 2004).

During voir dire of this case, members of the jury pool were asked if they knew Don Morehead, Appellant's attorney. Dooley responded that he and Morehead were high school basketball teammates in 1979, and that he had had no contact with Morehead since then. He further stated that the fact that they were teammates in 1979 would not render him more favorable to the defense, and that he would be fair and impartial. Nevertheless, the prosecutor used a peremptory strike on Dooley.

 We first note that Appellant made the requisite prima facie showing of racial discrimination necessary for a *Batson* challenge: (1) Appellant is African American, (2) Dooley is African American, (3) Dooley stated that his prior acquaintance with Morehead would not render him more favorable to the defense, (4) that he would

be fair and impartial, and (5) the prosecutor struck him from the jury pool. This is sufficient to raise an inference of racial discrimination.

 Next, we are satisfied that the prosecution met its burden of asserting a race-neutral explanation for striking Dooley. First, the prosecutor asserted that the fact that Dooley had been a high school basketball teammate of Morehead's gave her cause for concern about the potential for bias. Second, the prosecutor stated that Dooley had been on a jury the week prior to Appellant's trial and had found the accused not guilty.[6] Thus, the prosecution met its burden of producing a race-neutral reason for striking Dooley.

 Finally, the trial court found that the race-neutral reasons offered by the prosecution overcame Appellant's *Batson* challenge—that is, that Appellant had not *proven* intentional discrimination.[7] With respect to the potential for bias, the trial judge noted that he would hope any of his former teammates would give him the benefit of the doubt with regard to anything that he was involved in, which was enough to overcome any *Batson* issue. Upon the record before us, we cannot conclude that this finding is clearly erroneous. We therefore conclude that Appellant has not carried his burden to prove purposeful racial discrimination under the third prong of *Batson*, and hold that the trial court did not clearly err in denying Appellant's motion.[8]

---

6. The Christian Circuit Court apparently uses a jury pool that rotates on a monthly basis.

7. The opponent of the strike bears the burden of proof and persuasion. *See, e.g., Commonwealth v. Coker*, 241 S.W.3d 305, 309 (Ky. 2007) (noting that the opponent of the strike "bore the burden to prove discrimination at all times"); *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (stating that "the ultimate burden of persua-

sion regarding racial motivation rests with, and never shifts from, the opponent of the strike").

8. Appellant did not argue to the trial court that the prosecution's second race-neutral assertion—i.e., that Dooley had been on a jury the week prior to Appellant's trial that found a criminal defendant not guilty—was pretextual. Appellant, though, now argues that five other members of Appellant's jury had served

### C. The Motion for a Directed Verdict and Amended Indictment

■ Appellant argues next that the trial court erred when, after granting his motion for a directed verdict on the charge of trafficking in marijuana within 1,000 yards of a school, it permitted the Commonwealth to "amend the indictment"[9] to trafficking in marijuana, eight ounces or more. Appellant argues that permitting the Commonwealth to amend the indictment after a directed verdict was granted violated RCr 6.16. Because this issue is preserved, we review the trial court's decision to permit amendment of the indictment for abuse of discretion. *See Gilbert v. Commonwealth,* 838 S.W.2d 376, 378 (Ky.1991).

■ RCr. 6.16 states, in relevant part: "The court may permit an indictment, information, complaint or citation to be amended any time *before verdict or finding* if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." (Emphasis added). By the rule's plain language, a trial court may not permit an amendment after it has granted a directed verdict on a count.

With respect to the original charge of trafficking in marijuana within 1,000 yards of a school, the trial court ruled as follows:

*Trial Judge:* All right. There has not been any testimony with regard to location. I am going to, in essence, grant a directed verdict with regard to trafficking within 1,000 yards of a school; however, there is sufficient evidence to go to the jury of trafficking in greater than eight ounces. So that is the instruction, assuming that nothing else changes— that's the instruction I'm likely to give with regard to Count Number 3 of the indictment.

*Prosecutor:* I guess the Commonwealth would move to amend the count of the indictment based on the evidence.

*Trial Judge:* There's sufficient evidence in the record to do that. I'm going to deny the motion for summary judgment on the other counts, or for directed verdict, on the other counts. However, your motion is preserved for the record.

Counsel for the defense then objected to the amendment; his objection was overruled but noted for the record.

The parties disagree as to whether a motion for directed verdict was actually granted. The Commonwealth argues that the trial judge's use of the phrase "in essence" prevents the ruling from being a directed verdict. We disagree.

A trial judge cannot *in essence* grant a directed verdict but not *actually* grant it. Counsel for the defense moved for a di-

---

with Dooley on the jury the previous week, and that the prosecutor's failure to use any peremptory strikes against them proves the pretextual nature of its assertion. However, Appellant offers no evidence that the prosecution's other peremptory strikes were used on members of the venire that did *not* serve on that jury. For all we know, the prosecution's other strikes were indeed used on members of the prior week's jury. The record does reflect that the prosecution used one of its other peremptory strikes on a member of the venire who had filed a complaint against one of the testifying officers; however, Appellant has not shown that she was not on the prior week's

jury. It is unclear against whom the prosecution's other peremptory strike(s) was/were used. In any event, because Appellant did not argue to the trial court that this assertion was pretextual, we have no finding from that court which we could conclude was clearly erroneous.

9. Although Appellant was charged by information, and not indictment, on this count, we use the term "amend the indictment" for simplicity and to avoid any confusion the phrase "amend the information" may cause.

rected verdict, arguing that no evidence had been offered with respect to Appellant's home being within 1,000 yards of a school. The trial court agreed and was therefore obliged to grant a directed verdict of acquittal on that count. The "in essence" language is of no consequence. Having granted a directed verdict of acquittal, the trial court had no authority to permit amendment of that count of the indictment under RCr 6.16; for an amendment to have been permissible, the directed verdict would first have to have been set aside. Furthermore, in this case, even if the trial court had not granted a directed verdict of acquittal, our decision would be the same because the indictment; as amended, charged an "additional or different offense" in violation of RCr 6.16.[10] Thus, the trial court abused its discretion and Appellant's conviction for trafficking in marijuana, eight ounces or more must be reversed, and his sentence for that conviction vacated.

## D. Penalty Phase Admission of Testimony of Original and Amended Prior Charges.

 Appellant next argues that the penalty phase introduction of the original dismissed charges from his prior convictions was erroneous. Specifically, the

---

**10.** Trafficking in marijuana within 1,000 yards of a school requires different proof than trafficking in marijuana, eight ounces or more. The former requires proof of physical proximity, while the latter requires proof of weight. While both involve trafficking in marijuana, they are entirely different offenses. Moreover, trafficking in marijuana, eight ounces or more, is not a lesser included offense of trafficking in marijuana within 1,000 yards of a school—both are class D felonies. Thus, RCr 9.86, which permits a jury to find a defendant guilty of a lesser included offense, is inapplicable.

Also, the amendment in this case is markedly different than the amendments we have permitted in the past, where we have found the following *not* to qualify as "additional or different" offenses: an allegation that the defendant is guilty of the underlying charge by complicity, because "one who is found guilty of complicity to a crime occupies the same status as one being guilty of the principal offense," *see, e.g., Commonwealth v. Combs,* 316 S.W.3d 877, 880 (Ky.2010) (quoting *Parks v. Commonwealth,* 192 S.W.3d 318, 326–27 (Ky.2006) (internal alterations omitted)); amending an assault charge to change the mental state required to be proven from "intentionally" to "wantonly," *Owens v. Commonwealth,* 329 S.W.3d 307, 314 (Ky.2011); amending a charge of possession of drug paraphernalia to include additional paraphernalia not included in the original indictment, because "[i]dentifying additional items of paraphernalia did not charge Appellant with an 'additional or different' offense," *Johnson v.* *Commonwealth,* 105 S.W.3d 430, 442–43 (Ky. 2003); amending an indictment from second-degree PFO to first-degree PFO, because "PFO is a status, not a criminal offense," *Riley v. Commonwealth,* 120 S.W.3d 622, 631 (Ky.2003); designating a different subsection of the statute under which the defendants were originally charged, because the offense was the same and no additional evidence was required to prove the amended offense, *Schambon v. Commonwealth,* 821 S.W.2d 804, 810 (Ky.1991); amending a PFO count to list additional previous crimes, because "the only 'offense' charged in [that] count of both the original and amended indictment is that of charging the Appellant of being a[PFO] in the first degree," *Henderson v. Commonwealth,* 636 S.W.2d 648, 651 (Ky.1982); and amending the indictment to change the date of the occurrence of the alleged offense, *Stephens v. Commonwealth,* 397 S.W.2d 157, 158 (Ky.1965). *But see Frizzell v. Commonwealth,* 511 S.W.2d 200, 200 (Ky.1974) (holding that forgery and uttering a forgery are different offenses); and *Maum v. Commonwealth,* 490 S.W.2d 748, 749–50 (Ky.1973) (finding that amending a charge of public nuisance by permitting trafficking in narcotics to also include public nuisance by permitting persons to be under the influence of narcotics, to engage in fights, to park and congest the public ways, and to be under the influence of intoxicating beverages and/or to engage in disorderly conduct constituted additional or different offenses). Notably, all of these amendments were made *before* a verdict was rendered.

Commonwealth elicited testimony from the deputy circuit clerk as to Appellant's original 2001 charges of trafficking in a controlled substance and trafficking in marijuana, which were later amended to possession of a controlled substance and possession of marijuana; he was convicted of the amended charges. The Commonwealth also elicited testimony as to Appellant's original 2006 charges of trafficking in a controlled substance and trafficking in marijuana, which were also later amended to possession of a controlled substance and possession of marijuana; he was again convicted of the amended charges. This issue is unpreserved; however, we invoke our authority under RCr 10.26 and review for palpable error.[11]

■ During the penalty phase of a jury trial, KRS 532.055(2)(a)(2) allows the jury to hear "[t]he nature of prior offenses for which [the defendant] was convicted." Appellant argues that this does not include the original charges of an indictment that was amended prior to final judgment and conviction. We agree.

Nothing in KRS 532.055(2)(a) permits a jury to hear evidence during the penalty phase of prior charges that have been amended—it is only permitted to hear evidence of "the nature of the prior offenses for which [the defendant] was *convicted.*" KRS.055(2)(a)(2) (emphasis added). And we have recognized that "it is also well settled that the Commonwealth cannot introduce evidence of charges that have been dismissed or set aside." *Cook v. Commonwealth,* 129 S.W.3d 351, 365 (Ky.2004) (citations omitted); *see also Robinson v. Commonwealth,* 926 S.W.2d 853, 854 (Ky. 1996) (holding that "KRS 532.055(2)(a) permits the introduction of prior convic-

tions of the defendant, not prior charges subsequently dismissed"). For purposes of the penalty phase, criminal charges that have subsequently been amended are the functional equivalent of dismissed charges, which we have established to be impermissible as evidence in a sentencing hearing. *See Chavies v. Commonwealth,* 354 S.W.3d 103, 115 (Ky.2011) (holding that "the introduction of the indictment showing the charges that were later dismissed *and amended* was erroneous") (emphasis added). The prosecution may only introduce evidence of the nature of a defendant's prior offenses, including the charges for which he was convicted, and the trial court erred by permitting introduction of the pre-amended charges.

■ However, for Appellant to be successful on this issue we must also find that this error was palpable. In arguing that the error was indeed palpable, Appellant contends that he was prejudiced as evidenced by the jury's recommendation of the maximum sentence on each of the underlying charges. As such, he argues, prejudice can be presumed. Under the facts presented in this case, we agree.

We recently addressed a very similar issue in *Chavies,* where the defendant's indictment, showing dismissed and amended charges, was introduced during the penalty phase of his trial. In that case we concluded that the error was not palpable. In support of that conclusion, we noted that (1) the defendant did not receive the maximum penalty for one of the convictions for which he was being sentenced, and (2) "the dismissed and amended offenses were never pointed out to the jury by the trial judge, the Commonwealth, or

11. Under the palpable error standard, an unpreserved error may be noticed on appeal only if the error is "palpable" and "affects the substantial rights of a party," and even then relief is appropriate only "upon a determination that manifest injustice has resulted from the error." RCr 10.26.

the Commonwealth's witness." *Id.* at 115. Here, the opposite is true. Appellant received the maximum penalty on all counts for which he was convicted. Moreover, the Commonwealth not only elicited the testimony from the deputy circuit clerk regarding the original charges, but it also emphasized the prior amended charges in its closing argument to the jury.[12]

To be sure, there is no way of knowing whether or to what extent the introduction of the original charges influenced the jury to recommend the maximum penalty on all convictions. However, in reversing a similar decision we noted the following: "It has been observed that the maximum sentence has been imposed by the verdict, and it would be pure speculation for us to ponder what, if any, portion of the punishment stemmed from the improper argument of counsel." *Taulbee v. Commonwealth,* 438 S.W.2d 777, 779 (Ky.1969) (reversing and granting defendant new trial after the prosecutor made improper comments during closing arguments).

We conclude that introducing the original charges of Appellant's prior convictions constitutes palpable error in that it affected a substantial right to due process, resulting in a manifest injustice. *See* RCr 10.26. We therefore reverse and remand to the trial court for a new penalty phase, with instructions that the trial court not permit the Commonwealth to introduce prior amended charges for which Appellant was not convicted.

## E. Appellant's Status as a Persistent Felony Offender

Appellant next argues, and the Commonwealth agrees, that his conviction as a first-degree PFO is invalid as to Count 1 of the indictment because the evidence established that he had only one prior felony conviction at the time he committed the offense charged in Count 1. Although this issue is not preserved, we invoke our authority to review for palpable error under RCr 10.26.[13]

Under KRS 532.080, the Kentucky PFO statute, to be found guilty of being a first-degree PFO, a defendant must stand "convicted of a felony after having been convicted of two (2) or more felonies … at the time of commission of the felony for which he now stands convicted." Here, Appellant had only been convicted of one felony before the commission of the offense stated in Count 1 of his indictment— i.e., the trafficking in cocaine charge for the June 27, 2006 controlled purchase. He was convicted of possession of a controlled substance (cocaine) on November 6, 2002. Appellant's second conviction did not come until November 29, 2006—some five months after the commission of the offense charged in Count 1. Thus, the jury should have been instructed on second-degree PFO[14] for Count 1 of the indictment.[15]

---

**12.** During closing arguments, the prosecutor stated:

> [Appellant], within the past five, six, seven, eight years has been given several chances himself. He had *two* prior charges of trafficking that were amended to possession charges, and he was only given a one-year sentence on each one of those. So please think about the prior chances that he's been given and the fact that he did have the opportunity to take advantage of those chances and to do the right thing. But he kept committing the crimes.

**13.** *See supra* note 11.

**14.** Second-degree PFO status requires only one prior felony. KRS 532.080(2).

**15.** The trial court, however, properly instructed the jury on first-degree PFO on the other counts, because Appellant had been convicted of two felonies at the time he committed the felonies described in those counts (stemming from the May 17, 2007 controlled purchase). *See Bray v. Commonwealth,* 703 S.W.2d 478, 479–80 (Ky.1985) (finding that "[c]ommission

We conclude that the erroneous PFO jury instruction as to Count 1 of the indictment constitutes palpable error. We have found palpable error where a criminal defendant was convicted of being a PFO when the facts necessary to convict him thereof, although capable of being proved, were not in the jury instructions. *See Carver v. Commonwealth*, 303 S.W.3d 110, 123 (Ky.2010); *Sanders v. Commonwealth*, 301 S.W.3d 497, 499–500 (Ky.2010).[16] Here, unlike in *Carver* and *Sanders*, the facts necessary to convict Appellant of being a first-degree PFO as to Count 1 were *incapable* of being proved. *See also In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). Thus, we reverse Appellant's first-degree PFO conviction as to Count 1, vacate his sentence enhancement on that count, and remand to the trial court for a determination of whether Appellant is guilty of being a second-degree PFO. *See White v. Commonwealth*, 770 S.W.2d 222, 223–24 (Ky.1989) (holding that a trial on the charge of second-degree PFO when a conviction for first-degree PFO has been set aside on appeal does not violate double jeopardy when there is sufficient evidence to convict of second-degree PFO).

Our decision to remand for a new penalty phase renders Appellant's remaining allegations of error moot. However, we address them because they are likely to recur on remand.

of a felony after conviction of the second felony gives a defendant first-degree [PFO] status in his trial on the felony committed after his second conviction").

## III. ISSUES LIKELY TO RECUR ON REMAND

### A. Imposition of a Thirty–Year Sentence.

■ Appellant alleges that the trial court erred when it imposed a sentence of thirty years' imprisonment, which he argues exceeds the maximum aggregate allowable by Kentucky law. Specifically, Appellant contends that the maximum allowable sentence under KRS 532.110(1)(c) is twenty years' imprisonment.

We agree that the longest sentence of imprisonment that Appellant could have received is twenty years. KRS 532.110(1)(c) provides:

When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, ... the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that [t]he aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed....

KRS 532.080(6)(b) provides, in relevant part, that a first-degree PFO who presently stands convicted of a Class C or D felony "shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years." And a second-degree PFO "shall be sentenced to an indeterminate term of imprisonment pursuant to the sentencing provisions of KRS 532.060(2) for the next highest degree than the offense for which

**16.** The defendants in both *Carver* and *Sanders* had enough qualifying prior felony convictions for a PFO conviction, but the jury instructions did not mention them.

convicted." KRS 532.080(5). Because the highest degree of offense that Appellant was convicted of was a Class C felony, the next highest degree of offense is a Class B felony. Under KRS 532.060(2), a conviction of a Class B felony carries a maximum prison sentence of "not less than ten (10) years nor more than twenty (20) years."

Accordingly, as to Count 1, under KRS 532.080(5) and KRS 532.060(2), Appellant could have been sentenced to ten to twenty years' imprisonment.[17] As to Count 2, under KRS 532.080(6)(b), Appellant could have been sentenced to ten to twenty years' imprisonment. Thus, the maximum allowable sentence permissible under KRS 532.110(1)(c) is twenty years. A thirty-year sentence was therefore erroneous.

This conclusion is clearly supported by the plain language of the statute, its commentary, and our case law. KRS 532.110(1)(c) limits consecutive sentences to "the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed"—here, twenty years for the Class C felony for which Appellant was found guilty in Count 2, enhanced by his first-degree PFO conviction pursuant to KRS 532.080(6)(b).[18]

Moreover, the Commentary to KRS 532.110 supports our conclusion.

The third exception, provided in subsection (l)(c), places an upper limit on the maximum term of imprisonment that can be imposed through consecutive indeterminate terms. This subsection establishes a maximum for accumulated indeterminate terms that is equivalent to the maximum term that can be imposed on a persistent felony offender under KRS 532.080. For example, if an offender stands convicted of three offenses, ... if the greatest of his offenses is a Class C felony, his consecutive sentences when accumulated could equal an indeterminate term having a maximum of no more than twenty years.

This is precisely the situation presented by this case.

We discussed this issue squarely in *Sanderson v. Commonwealth,* 291 S.W.3d 610 (Ky.2009) and came to the same conclusion. In that case, the defendant was convicted of two Class C felonies and three Class D felonies, and was sentenced to thirty-five years in prison. Although we reversed his convictions and remanded for a new trial, we stated that "if he is convicted of the same felonies after another trial, his maximum sentence cannot exceed twenty years' imprisonment."[19]

Because the plain language of the statute, its commentary, and our case law all prohibit the imposition of a sentence of more than twenty years' imprisonment for the crimes for which Appellant was convicted, on remand he cannot be sentenced to more than twenty years in prison.[20]

---

17. This assumes that Appellant is guilty of second-degree PFO as to Count 1.

18. If on remand the trial court finds Appellant guilty of second-degree PFO on Count 1, the maximum enhanced prison sentence would still be twenty years pursuant to KRS 532.080(5).

19. *See also Hendley v. Commonwealth,* 573 S.W.2d 662, 668 (Ky.1978) (reversing a sentence of twenty-five years (in the form of sentences of five, ten, and ten years to be run

consecutively) because "[t]he highest class of crime for which sentence was imposed upon the appellant was ... a Class C felony [which] limits the appellant's sentence to no more than 20 years, instead of the 25 years under which he now labors. Thus, the appellant faces five years of imprisonment more than that to which he could legally be sentenced.").

20. We emphasize here the possibility (and permissibility) that Appellant will again receive the maximum allowable penalty on all charges. It is not that Appellant is immune

## B. Invocation of Unenhanced Penalty for Possession of Drug Paraphernalia

■ Appellant's final argument is that he should be permitted to invoke KRS 218A.500 as amended to eliminate second or subsequent offender enhancement for possession of drug paraphernalia.

KRS 218A.500 is the statutory provision that deals with the definitions, offenses, and penalties associated with drug paraphernalia. As amended, subsection (5) of that statute provides that "[a]ny person who violates any provision of this section shall be guilty of a Class A misdemeanor." The effective date for this statute as amended was April 13, 2010.[21] The trial court instructed the jury to set a sentence for the possession of drug paraphernalia charge in accordance with the laws which were in effect at the time he committed his crime and at the time of his trial. At those times, possession of drug paraphernalia, second or subsequent offense, was a Class D felony, which carried a penalty of one to five years in prison.

Citing KRS 446.110,[22] Appellant seeks to invoke KRS 218A.500 as amended, and be sentenced as a Class A misdemeanant.

At common law, when the legislature modified or repealed a statute, the courts no longer had the authority to enter any judgment relying upon the prior law. KRS 446.110 modifies this common law rule so that, unless the General Assembly specifically designates otherwise, "offenses committed against the statute before its repeal, may thereafter be prosecuted, *and the penalties incurred may be enforced.*"

*Lawson v. Commonwealth,* 53 S.W.3d 534, 550 (Ky.2001). Thus, the trial court did not err in instructing the jury on the pre-amended possession of drug paraphernalia penalties. However, KRS 446.110 also provides an exception: "If any penalty, forfeiture or punishment is mitigated by any provision of [a] new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect."

Accordingly, KRS 446.110 requires that the "penalty, forfeiture, or punishment" be mitigated by a provision of the new law. The maximum penalty for a Class D felony is five years' imprisonment. KRS 532.060(d). The maximum penalty for a Class A misdemeanor is one year's imprisonment. KRS 532.090(2). Clearly, the as-amended version of KRS 218A.500 mitigates the penalty or punishment for a conviction of possession of drug paraphernalia.

Moreover, judgment was "pronounced after the new law [took] effect." KRS 446.110. Appellant's trial was in March 2010; the amendment to the drug paraphernalia statute took effect on April 13,

from the maximum allowable penalty, but that he is entitled to be sentenced within the confines of Kentucky's statutory provisions and due process of law.

21. Appellant's trial was in March 2010, and he was sentenced on September 8, 2010.

22. This statute states:

No new law shall be construed to repeal a former law as to any offense committed against a former law, nor as to any act done, or penalty, forfeiture or punishment incurred, or any right accrued or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued or claim arising before the new law takes effect, except that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings. If any penalty, forfeiture or punishment is mitigated by any provision of the new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect.

2010; and the judgment of sentence (i.e., the final, appealable judgment) occurred on September 8, 2010.[23]

Although Appellant did not bring the as-amended version of the drug paraphernalia statute to the attention of the trial court, and therefore did not "consent" to its retroactive application before judgment of sentence, we see no reason not to permit him to request it on remand during the new penalty phase.[24]

## IV. CONCLUSION

In conclusion, we: (1) reverse Appellant's conviction for trafficking in marijuana, eight ounces or more, and vacate his sentence for that conviction; (2) reverse Appellant's conviction for first-degree PFO as to Count 1 of the indictment, and vacate the enhanced sentence for that count; (3) affirm Appellant's remaining convictions; and (4) remand this case to the Christian Circuit Court for a new penalty phase consistent with this opinion.

All sitting. All concur.

23. We recognize that the facts surrounding this issue are quite unique in that the statute's amendment went into effect after Appellant's trial and verdict, but before his judgment of sentence. Ideally, defendants will consent to retroactive application under KRS 446.110 before the trial. However, that was not possible in this case.

24. We note that if the sentence for Appellant's possession of drug paraphernalia conviction is again run concurrently with the sentences for his trafficking convictions then the retroactive application of KRS 218A.500 will make no difference to his term of imprisonment. However, KRS 446.110 is available to him irrespective of its ultimate effect, because the penalty defined by the old law is, in fact, mitigated by the penalty defined by the new law. That is all that is required for the amendment to be available to a defendant.