Michael Gordon BEEMER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

March 8, 1984.

Rodney McDaniel, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Sarah M. Jackson, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Justice.

This is an appeal from a judgment sentencing appellant to imprisonment for 20 years as a persistent felony offender as a result of his conviction on charges of trafficking in and possession of controlled substances. Appellant had been convicted previously on seven counts of unlawful possession or sale of controlled substances. Because of an important question relating to search and seizure we granted oral argument, and we now affirm the conviction.

Appellant was arrested after the search of an automobile in his possession yielded a substantial quantity of controlled substances. The search was conducted pursuant to a search warrant. The affidavit in support of the warrant was based upon information from an anonymous informer and read as follows:

"On the 6th day of February, 1982, at approximately 8:00 a.m./p.m., affiant received information from /observed an anonymous informer that two people from Dayton Ohio who were staying at a local motel had recently brought to Owensboro for the purpose of resale two large quantities of Quaaludes. The informant stated that, during that week, the subjects had brought approximately 3000 pills and, during the preceding week, had brought approximately 2000 pills. The informant further advised that the subjects were driving a blue pickup truck. Affiant surveyed several local motels and discovered parked at the Colonel House Motel at the Corner of 19th and Triplett streets, a blue pickup truck which affiant recognized as belonging to Mike Beemer, a local resident

known to affiant to be active in the traffic in illegal drugs. Affiant inquired of the clerk at said motel and determined that the truck was in the possession of the occupants of Unit 139 which was leased to Herbert Ordie Edgington and Kelly Stanley Edgington who gave their home address as Dayton, Ohio. Affiant, assisted by other officers, took the Edgington subjects under surveillance beginning on 9 February. Subjects were followd to 915 Peppertree Lane, Apartment B, and stayed 30 minutes. Affiant learned from United Parcel Service that a 1″ × 7″ × 10″ package was delivered during the morning hours of 12 February to Cotton Clark at Advance Aluminum Co. At 2:10 PM on 12 February a white Cadillac was observed (lic AZD–894 KY) arriving at 915 Peppertree Lane. At 2:15, the occupant left the apartment. Affiant recognized "Cotton" (t/n b/t/b Charles) Clark as the driver. Clark is known to affiant to have been involved in voluminous illegal narcotic transactions at his place of business. At 2:21 PM 12 February, the Edgington subjects were observed arriving at 915 Peppertree Lane in the blue pickup truck which previously belonged to Mike Beemer. They entered apartment B. Kelly Stanley Edgington was carrying a large (24″ × 12″) purse. At approximately 3:30 PM, Mike Beemer was observed coming out of the apartment carrying a package which appeared to be a rolled up green trash bag which he placed inside a silver Mustang II (approximately 1974 model) which was parked in front of 915 Peppertree Lane. At 3:47 PM 12 February 1982 the xxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxx Edgington subjects left the apartment. Previous investigation indicated that Herbert Ordie Edgington was driving with a suspended or revoked operators license issued by the state of Texas. Acting on that information, another officer stopped the truck driven by them and, upon learning that the license presented by him was expired, and noting that the subject was from out of state, placed him under arrest. During the arrest, the female subject was found to be in possession of a quantity of crystalline powder believed to be cocaine. Affiant believes, based upon the foregoing events, that illegal drugs are being prepared for sale or distribution in apartment B, 915 Peppertree Lane and are being stored in the silver Mustang II. Affiant further believes that evidence of trafficking in illegal drugs will be found in unit 139, Colonel House Motel.

Appellant questions the validity of the warrant because the affidavit does not establish the credibility and reliability of the informant. The Constitution of the United States and the Constitution of the Commonwealth of Kentucky each prohibit unreasonable searches and seizures. In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court established a two-pronged test applicable to search warrants based upon information from anonymous informants, to-wit; (1) that the basis of the knowledge of the informant be shown, and (2) that the reliability of the informant must be established.

Because Kentucky cannot accord less protection from searches and seizures than is afforded by the United States Constitution, we were bound to follow the *Aguilar* and *Spinelli* decisions. We did so in *Berkshire v. Commonwealth*, Ky., 471 S.W.2d 695 (1971); *Thompson v. Commonwealth*, Ky., 472 S.W.2d 884 (1971), and *Buchenburger v. Commonwealth*, Ky., 482 S.W.2d 747 (1972), in which we determined the two-pronged test established by *Aguilar*, *supra* and *Spinelli*, *supra*, to be a requirement under the Kentucky Constitution as well as the United States Constitution.

The United States Supreme Court has now abandoned the two-pronged test of *Aguilar* and *Spinelli* and has adopted a "totality of the circumstances" test. *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

"We also have recognized that affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area.' *Ventresca, supra,* 380 U.S., [102] at 108, 13 L.Ed.2d 684, 85 S.Ct. 741 [745]. Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of 'probable cause.' See *Shadwick v. City of Tampa,* 407 U.S. 345, 348–350, 32 L.Ed.2d 783, 92 S.Ct. 2119 (1972). The rigorous inquiry into the *Spinelli* prongs and the complex superstructure of evidentiary and analytical rules that some have seen implicit in our *Spinelli* decision, cannot be reconciled with the fact that many warrants are—quite properly, ibid.—issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings. Likewise, given the informal, often hurried context in which it must be applied, the 'built-in subtleties,' *Stanley v. State,* [19 Md.App. 507], 313 A.2d 847, 860 (Md.App.1974), of the 'two-pronged test' are particularly unlikely to assist magistrates in determining probable cause.

"Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli, supra,* 393 U.S., at 419, 21 L.Ed.2d 637, 89 S.Ct. 584 [at 590]. 'A grudging or negative attitude by reviewing courts toward warrants,' *Ventresca, supra,* 380 U.S., at 108, 13 L.Ed.2d 684, 85 S.Ct. 741 [at 745], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant 'courts should not invalidate ... warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, man-

ner.' *Id.,* at 109, 13 L.Ed.2d 689, 85 S.Ct. 741 [at 746].

"If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring 'the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.' *United States v. Chadwick,* 433 U.S. 1, 9, 53 L.Ed.2d 538, 97 S.Ct. 2476 [2482] (1977). Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Jones v. United States,* 362 U.S. 257, 271, 4 L.Ed.2d 697, 80 S.Ct. 725 [736], 78 ALR2d 233 (1960). See *United States v. Harris,* 403 U.S. 573, 577–583, 29 L.Ed.2d 723, 91 S.Ct. 2075 [2079–82] (1971).[10] We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable cause determinations of magistrates than is the 'two-pronged test.'

. . . .

"... The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability that contraband or evidence of a crime will be found in a particular place.* And the duty of a reviewing

court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. *Jones v. United States,* supra, 362 U.S., at 271, 4 L.Ed.2d 697, 80 S.Ct. 725 [at 736], 78 ALR2d 233. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.*" *Illinois v. Gates,* —— U.S. —— at ——, 103 S.Ct. 2317 at 2330–32, 76 L.Ed.2d 527 at 546–547, 548.

Even though the United States Supreme Court has abandoned the rule of *Aguilar* and *Spinelli, supra,* as a federal constitutional requirement, the question remains as to whether we shall retain these tests as a matter of state constitutional interpretation.

■ Our decisions in *Berkshire, Thompson,* and *Buchenburger, supra,* were required of us because we must, of necessity, comply with the decisions of the United States Supreme Court. They did not constitute an independent determination of Kentucky law but were compelled by Federal law. We are fully in accord with the relaxation of the Federal requirements as expressed in *Illinois v. Gates, supra,* and to the extent that *Berkshire v. Commonwealth, supra; Thompson v. Commonwealth, supra;* and *Buchenburger v. Commonwealth, supra,* express a contrary view, they are overruled.

■ Appellant also contends that the affidavit on its face does not establish probable cause that any controlled substance would be found in the motor vehicle in appellant's possession. We think the totality of the circumstances, including the informant's tip and the subsequent surveillance and investigation by the police officers, established a substantial basis for a reasonable belief by the magistrate that the Edgingtons had brought a quantity of controlled substances for sale into the jurisdiction and a reasonable probability existed that some of it had been distributed to appellant, who was known previously to be associated with trafficking in controlled substances. It was likewise reasonable to believe that a plastic garbage bag which appellant placed in the trunk of his motor vehicle during a visit to his residence by the Edgingtons may have contained a portion of the contraband.

Other errors alleged by appellant we find to be either unpreserved for review, without merit, or harmless error beyond a reasonable doubt.

The Judgment is affirmed.

STEPHENS, C.J., and VANCE, AKER, LEIBSON, WINTERSHEIMER and STEPHENSON, JJ., concur.

GANT, J., did not sit or participate in this case.