IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2000 Session

## JIM VINES D/B/A GOOD STUFF! v. DAVID GIBSON D/B/A GOOD STUFF!

**Appeal from the Circuit Court for Anderson County**
**No. 97LA0256      James B. Scott, Jr., Judge**

**FILED FEBRUARY 27, 2001**

**No. E2000-02257-COA-R3-CV**

In this breach of contract case, the defendant appeals from the trial court's refusal to grant a new trial or set aside an order favorable to the plaintiff. Because we find that the defendant did not receive advance notice of the hearing that led to the entry of the order, we vacate the order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Robert M. Bailey, Knoxville, Tennessee, for the appellant, David Gibson, d/b/a Good Stuff!.

David S. Clark, Oak Ridge, Tennessee, for the appellee, Jim Vines, d/b/a Good Stuff!.

**OPINION**

I.

The issue on this appeal is whether the defendant is entitled to relief from an order -- entered August 27, 1999 -- pursuant to Tenn. R. Civ. P. 59, which affords relief from a judgment due to mistake, inadvertence, surprise, or excusable neglect. *See Campbell v. Archer,* 555 S.W.2d 110, 112 (Tenn. 1977); *Henson v. Diehl Machines, Inc.,* 674 S.W.2d 307, 310 (Tenn. Ct. App. 1984). Because a Rule 59 motion to set aside a judgment addresses itself to the sound discretion of the trial court, our scope of review is limited to whether the trial court abused its discretion in denying the defendant's motion. *See Henson,* 674 S.W.2d at 310.

## II.

In 1997, the plaintiff, Jim Vines, d/b/a Good Stuff!, filed suit against the defendant, David Gibson, d/b/a Good Stuff!, alleging that the defendant had breached a contract to sell his business to the plaintiff. The defendant retained R. Louis Crossley, Jr. of the Knoxville law firm of Long, Ragsdale & Waters, P.C., to represent him in that suit.

An agreed order was entered in this case in July, 1997. Pursuant to that order, the parties agreed that the defendant would not use the name of the business sold to the plaintiff for any business purpose in Tennessee. In March, 1998, the trial court found the defendant in contempt for using the name of the business in violation of the agreed order. The court further ordered the defendant to provide the plaintiff with various bank, phone, and facsimile records of the business. In April, 1998, the plaintiff filed a second petition for contempt, alleging that the defendant had failed to produce the specified records. The plaintiff's second petition was before the court on May 10, 1999. The defendant was not present at the hearing. The record is silent as to whether Crossley attended the hearing; however, we note that he did not approve the order that followed the May 10, 1999, proceeding.[1]

At the May 10, 1999, hearing, the trial court considered a motion to withdraw filed by Crossley four days earlier. Crossley's motion states that the defendant

> has requested that [Crossley] withdraw as his counsel, and that he be allowed to either represent himself *pro se* or obtain substitute counsel in this cause. Movant has thouroughly [sic] explained the ramifications of his withdrawal to Defendant and Defendant assents to the requested withdrawal.

By the above-referenced order, which was entered on May 27, 1999, the trial court permitted Crossley to withdraw. In the same order, the court gave the defendant thirty days to hire another attorney and to produce the various records as previously ordered. While making no specific finding of contempt, the May 27, 1999, order sanctioned the defendant in the form of an attorney's fee award of $1,500, the collection of which the court "deferred." The court further held in the order that if the defendant did not comply with its terms, he would be held in contempt and "punished accordingly."

In June, 1999, the defendant, acting pro se, filed a motion to set aside the trial court's order of May 27, 1999, alleging that the plaintiff's attorney had agreed to delay the hearing on the second petition for contempt and that "[n]either Mr. Crossley or the defendant had any idea that [the plaintiff's attorney] intended to go forward on 5/10/99." A hearing on the defendant's motion to set aside was scheduled for September 13, 1999.

---

[1] The order contains a certificate of service on Crossley.

A "final" hearing on the plaintiff's breach of contract action was held on August 27, 1999. The defendant did not attend. Upon the testimony of the plaintiff and the record as a whole, the trial court found that the defendant had breached the contract. It awarded the plaintiff $30,580.34 in damages, plus attorney's fees. On September 27, 1999, the defendant filed a pro se motion to set aside the order, alleging that he had not been notified of the August 27, 1999, court date. Later, the defendant retained his current counsel and filed an amendment to the motion, attached to which was the affidavit of the defendant. The affidavit states, in pertinent part, as follows:

> I did not receive notice orally or in writing that a trial was set in this case for August 27, 1999. If I had been aware of a trial setting of August 27, 1999, I would have appeared for the hearing and presented proof in this case.

> I appeared in this Court on September 13, 1999 for a hearing on the Motion I filed on June 22, 1999 to set aside an Order entered May 27, 1999 concerning a contempt issue. I appeared on that date because I was told by the Clerk that my motion would be set for September 13, 1999. I was never told by the Clerk or anyone else that a trial was set for August 27, 1999.

A hearing on the defendant's motion to set aside the August 27, 1999, order revealed the following facts. The scheduling of cases for trial in the trial court is governed by Local Rule 118.06, which provides for a "regular docket sounding" to be held on the first Monday in February, June, and October for the purpose of setting the court's docket and scheduling cases for trial. For parties represented by counsel, notice of a docket sounding is mailed by the Circuit Court Clerk via an envelope addressed to the law firm with which the attorney of record is affiliated. Cases in which juries have been requested are not set until the day of the docket sounding. On the other hand, cases in which juries have not been requested are set for trial by the Circuit Court Clerk in advance of mailing notice of the docket sounding. To notify attorneys of these bench trials, the Clerk includes with the general notice of the docket sounding a separate sheet for each attorney in the firm, listing the attorney's name and his or her cases that have been scheduled for bench trials.

The instant case was initially scheduled for a bench trial in May, 1998. For reasons not specified in the record, the case was continued and reset for a trial date in December, 1998. The case was continued again and rescheduled for August 27, 1999. According to court records, the August trial date was set in January, 1999, presumably in anticipation of the February, 1999, docket sounding. At the time the case was set for trial, Crossley was listed as attorney of record for the defendant. Thus, any notice of the August trial date should have been placed in an envelope addressed to Crossley's law firm, Long, Ragsdale & Waters.

Crossley testified, however, that while serving as the defendant's counsel, he did not receive notice of the August 27, 1999, trial date; in fact he testified that he had received "no notice whatsoever of any of the trial settings in this case." In addition, Crossley testified that the plaintiff's

attorney had never mentioned the August trial date. He stated that he "had no knowledge from any source that it was set for trial at that time." Because he was never aware that the case had been set for trial, Crossley, according to his testimony, did not inform the defendant of that trial date.

Darlene Loy, the chief deputy clerk of the Anderson County Circuit Court, testified regarding the procedure by which attorneys are notified of the scheduling of bench trials. She further testified in pertinent part, as follows:

> Q.     What happens in the event that that lawyer is no longer at that office or there's been a bad address or there is some problem with the mailing, what happens to that piece of paper or that envelope?
>
> A.     If the envelope is returned unable to serve or whatever, then we put it in the file folder, you know, so we'll know that that attorney did not get notice of docket sounding.
>
> Q.     Do you know if there is such a return in this file?
>
> A.     I have looked in the file. There is no such – no.

Loy testified that she had no recollection of anything other than the normal procedure occurring in this case. She noted that she was not aware of any instances since the County began their system of notification in 1992 where attorneys did not receive notification of trial dates. In fact, she reported that she had never received any complaints about the system.

Following the conclusion of the proof, the trial court remarked from the bench as follows:

> THE COURT: Well, Gentlemen, I am not going to set this aside. I am not going to unravel my system on the testimony that we have thus far. I think basically that I can take judicial knowledge of what is contained in the file and what has occurred at least as is documented in the file. And,...I could be wrong, but until a court tells me that our routine practice of setting cases here is going to be based upon testimony of someone not getting notice of those docket soundings – we have people come here all the time and our system has not been found to be in error, but as [deputy clerk Loy] stated, has been complimented because we organize it in such a way that the attorneys know exactly what cases they have in this jurisdiction, whether they are nonjury or jury. If they are nonjury, then it's set for trial, and if it's jury, then we have a docket sounding, and if they come – some people don't. Some people don't come to our docket sounding, and I go ahead and set their case anyway based upon that.

-4-

So I am not going to set aside the whole system based upon what I have heard thus far. All right?

MR. BAILEY: Well, Your Honor, just one thing before we finish. I am not asking you to set aside your whole system, I am just asking you to set aside this one judgment.

THE COURT: Well, that's what I do, you see.

MR. BAILEY: Your Honor, you have had some testimony from this attorney, who I don't think has any reason to mislead the court, that he did not receive notice.

THE COURT: We have a presumption that once you place something in the United States mail, it's received. Now, as to whether the problem is maybe in his office, I don't know. Mr. Crossley is an officer of this court and I trust him. But nonetheless, I have been an attorney myself out there practicing and we routinely send these things out. We send it to the address. No one is really taking issue with that. At least [deputy clerk Loy is] 99 percent positive. Now, our envelopes I believe are prepared by the same computer. Everything goes in it. And it's not something that I am easily swayed whenever I feel like that maybe the error is somewhere else. I am not saying that Mr. Crossley has made an error in this case. It's just that [the defendant has not] carried the burden to set this aside, and that's the judgment of the court.

It is important to note that the trial court did not question Crossley's credibility. As can be seen from the excerpt, the court noted that "Mr. Crossley is an officer of this court and I trust him." Nevertheless, the court found that the defendant had failed to carry his burden to set the judgment aside. We respectfully disagree with the trial court's conclusions.

III.

The defendant testified, without direct contradiction, that he was not aware of the August 27, 1999, trial date.[2] Crossley testified that, not having knowledge himself of that trial setting, he would have had no occasion to notify the defendant. There is also direct evidence from Crossley that, for whatever reason, he was not receiving notices of trial settings during the time that he was counsel of record for the defendant. While there is no direct testimony that the clerk's system of notification

---

[2]This testimony comes from the defendant's affidavit filed in connection with his attempt to set aside the August 27, 1999, order. The parties stipulated that this affidavit along with one other could be considered by the trial court. The defendant apparently resides, at least part time, in Florida.

was not followed in this case, there is proof that the system did not result in the receipt of notice by Crossley. No system is perfect, and, as we all know from personal experience, the mails do not always "complet[e]...their appointed rounds," despite the United States Postal Service's assertion to the contrary. If Crossley is to be believed – and, as the trial court noted, there is no reason to doubt his veracity – the system, for whatever reason, did not achieve its intended result, *i.e.*, notice to Crossley. If the latter had no notice, there is absolutely no reason to doubt the defendant's testimony that he did not receive notice.

Due process requires that all parties to litigation receive notice of hearings. ***Bryant v. Edwards,*** 707 S.W.2d 868, 870 (Tenn. 1986). In this case, the defendant was to have received that notice through his counsel. For whatever reason, this did not happen in the instant case. We find that this record "make[s] out a case of mistake, inadvertence, or excusable neglect, rather than one of willful failure to appear." ***Campbell,*** 555 S.W.2d at 113. Accordingly, we hold that the trial court erred in refusing to set aside the "final" order in this case.

Our opinion should not be read as a repudiation of the system of notification long in place in Anderson County. From the testimony, it is clear that the system is working well. By the same token, our decision should not be interpreted as a departure from the line of cases treating a mailing as complete upon the deposit of same with the United States Postal Service. *See, e.g.*, ***Card v. Tennessee Civil Serv. Comm'n,*** 981 S.W.2d 665, 666 (Tenn. Ct. App. 1998) (holding that proof of due mailing raises the presumption that a letter was received). We simply hold that there is compelling evidence that the notification system did not work in this case.

IV.

The order of the trial court entered August 27, 1999, is hereby vacated. This case is remanded for further proceedings, consistent with this opinion. Exercising our discretion, we tax the costs on appeal to the appellant, David Gibson, d/b/a Good Stuff!.

 

_____
CHARLES D. SUSANO, JR., JUDGE