# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  SEPTEMBER 24, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0023-MR

GILBERT HALL                                                APPELLANT

V.                     ON APPEAL FROM BRACKEN CIRCUIT COURT
HONORABLE STOCKTON B. WOOD, JUDGE
NO. 17-CR-00031

COMMONWEALTH OF KENTUCKY                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A circuit court jury convicted Gilbert Hall of second-offense trafficking of a controlled substance in the first degree and recommended a sentence of twenty years' imprisonment.  He now appeals the resulting judgment as a matter of right.[1]  He argues that the trial court erred by denying his motion to suppress evidence obtained under a warrant to search his residence and that palpable error resulted from extraneous information contained in trial exhibits available for the jury's review during deliberation.

We affirm the judgment.  We hold that the trial court properly denied Hall's motion to suppress because the issuance of the search warrant for the residence was supported by probable cause and because any error resulting from the jury's access to exhibits containing extraneous information was

---

[1] Ky. Const. § 110(2)(b).

waived by trial counsel's failure to object, and otherwise fails to rise to the level of palpable error.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Trooper Currans believed individuals with outstanding arrest warrants were staying in Gilbert Hall's residence. He therefore called Hall and obtained his permission to enter the residence to search for these individuals. Once inside, Currans observed two padlocked doors downstairs and three women upstairs, all with outstanding arrest warrants.

Currans first approached Chelsey Curtis, who was sitting in a room with a hole in the wall that visibly held a green Crown Royal bag. The bag contained needles and a spoon with residue. When asked if the bag was hers, she stated she would claim it but that it contained "a little bit of everyone's things." She also informed Currans that a needle was in the drawer of the dresser.

In another room, Currans located two other women, Chylynn Elliot and Hope Elliot. On a table inside the room they occupied, Currans observed a plate holding a syringe, a razor blade, and a plastic bag. As he was leaving, he saw in an unoccupied room a spilled trashcan containing needle caps.

Based on these observations, Currans sought and obtained from the trial commissioner a search warrant for the premises. The search revealed additional drug paraphernalia and a locked safe. He then obtained a second search warrant for the safe and found inside methamphetamine, marijuana, a digital scale, cash, a rolled-up dollar, straws, a cell phone, needles, and a needle cap.

2

Hall was later indicted on one count of trafficking a controlled substance of more than two grams of methamphetamine in the first degree, second offense. He moved to suppress the evidence against him based on a lack of probable cause for the first search warrant, but the trial court denied his motion.

## II. ANALYSIS

### A. The Trial Court Properly Denied the Defendant's Motion to Suppress.

In reviewing a trial court's suppression-motion ruling, an appellate court first determines if substantial evidence supports the factual findings.[2] The proper factual findings are then reviewed to determine if the trial court accurately decided that the issuing judicial officer had a substantial basis for concluding probable cause existed.[3] So we review the trial court's conclusion that a substantial basis existed for the trial commissioner's determination of probable cause.[4] The trial commissioner's decision is given deference, and a reviewing court only considers the information within the four corners of the affidavit.[5]

---

[2] *Commonwealth v. Pride,* 302 S.W.3d 43, 49 (Ky. 2010); *Beemer v. Commonwealth,* 665 S.W.2d 912, 915 (Ky. 1984) (applying the "substantial basis" test to the decision of the warrant-issuing judge to determine if there was probable cause).

[3] *Pride*, at 49. ("The proper test for appellate review of a suppression hearing ruling regarding a search pursuant to a warrant is to determine first if the facts found by the trial judge are supported by substantial evidence, and then to determine whether the trial judge correctly determined that the issuing judge did or did not have a 'substantial basis for . . . conclud[ing]' that probable cause existed.") (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[4] *Id.*

[5] *Id.* ("[A]ll reviewing courts must give great deference to the warrant-issuing judge's decision . . . .") (citing *Gates*, 462 U.S. at 238).

The Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution protect a citizen from unreasonable searches and seizures. A search warrant is required to "allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search."[6] Any valid search warrant must be adequately supported by probable cause.[7] In determining if probable cause exists, the issuing judicial officer evaluates the totality of the circumstances, as described in the supporting affidavit.[8] The issuing judicial officer must consider the circumstances stated in the affidavit and determine if they establish a fair probability that contraband or evidence of a crime will be found in the place to be searched.[9]

In the present case, substantial evidence supported the trial court's finding that the warrant was supported by probable cause. The totality of the circumstances described in the affidavit indicated that evidence of drug trafficking would likely be found at Hall's residence. The affidavit stated that Currans, after entering the home with Hall's permission, observed various drug paraphernalia, such as needle caps, razor blades, and residue on spoons. Further, the affidavit described that he found three women with outstanding arrest warrants who were staying there. Additionally, most of the paraphernalia Currans observed remained unclaimed at the time he applied for a warrant. The green Crown Royal bag was partially claimed by Curtis, who

---

[6] *Id.*

[7] *Id.*

[8] *Beemer*, 665 S.W.2d at 914.

[9] *Id.* at 915.

4

stated it was hers but that it contained everyone's things. However, no one claimed the discarded needle caps or the plate, syringe, or razor blade. The unclaimed items, the padlocked doors, and the fact that Currans saw drug paraphernalia in three different rooms located near or in the possession of two women staying at Hall's residence established that additional evidence of drug trafficking would likely be found inside the residence.

Therefore, substantial evidence supported the trial court's determination that probable cause existed because the affidavit provided the issuing trial commissioner a substantial basis to conclude evidence of drug trafficking would likely be found at Hall's residence. As such, we affirm the trial court's denial of the suppression motion.

## B. Hall is not entitled to a new penalty-phase trial.

Hall contends that he is entitled to a new penalty phase because he was prejudiced by extraneous information contained in the Commonwealth's exhibits introduced during the penalty phase of the trial. During the penalty phase, the jury heard testimony from Hall's parole officer listing his extensive history of criminal convictions. The Commonwealth then introduced copies of these prior convictions as trial exhibits. And the trial court sent these exhibits into the jury room, making them available for review by the jury during deliberation. The Commonwealth does not dispute that some of these exhibits contained extraneous information: a listing of an amended charge and the names of two of Hall's prior victims.

## 1. Hall waived for this appeal the issue of extraneous information appearing in the Commonwealth's penalty phase exhibits.

As an initial matter, we note that any error resulting from the information within the exhibits was invited and, therefore, could be properly considered waived on appeal.[10] Lack of objection can result in either the issue being unpreserved or waived.[11] An issue is waived when there is a knowing relinquishment of a right.[12] This requires some affirmative act by the waiving party.[13] For example, in *Quisenberry v. Commonwealth*, the defense approved jury instructions after being able to review them and raise any objections.[14] As a result, any error arising from the instructions was invited because any issue with the instructions should have been raised after reviewing them.[15] So the right to challenge the instructions on appeal was relinquished.[16] Similarly in *Graves v. Commonwealth*, an error in jury instructions was waived because defense counsel was informed of the defect at trial by opposing counsel but raised no objection and subsequently approved them.[17] The trial counsel's awareness and acceptance of the proposed, defective jury instructions invited

---

[10] *Salisbury v. Commmonwealth*, 556 S.W.2d 922, 927 (Ky. App. 1977).

[11] *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37–38 (Ky. 2011).

[12] *Id.* at 38.

[13] *Id.*

[14] *Id.* at 37, 38.

[15] *Id.* at 38.

[16] *Id.* at 37 ("[H]owever, at the close of proof, when the trial court and parties were discussing the jury instructions, Quisenberry himself requested facilitation instructions and referred the court to evidence he claimed supported them. These alleged errors, therefore, were not merely unpreserved, they were invited.").

[17] 384 S.W.3d 144, 152 (Ky. 2012).

any instructional error such that any challenges to them were waived on appeal.[18]

Further, even if counsel is unaware of an issue, if it could have been discovered through adequate investigation it is waived on appeal. For example, in *McQueen v. Commonwealth*, a jury selection issue was not raised during trial because counsel was not aware of it.[19] But the issue was waived on appeal because "[t]hrough the exercise of reasonable diligence, McQueen's counsel could have discovered the disqualification of Juror S.S. prior to examining the jurors . . . . As such, we hold that McQueen waived his jury selection argument."[20] Trial counsel could have discovered the issue and objected at trial, but having failed to do so, could not later raise the issue on appeal.[21] Likewise, in *Cummings v. Commonwealth*, a jury-empanelment issue was waived because there was "no indication in the record that the defense should not have been similarly aware of the erroneous presence of Juror #25."[22] The issue was not merely unpreserved but waived because counsel had the opportunity to know of the error and to object during trial.[23]

In this case, Hall has waived his right to challenge the Commonwealth's penalty-phase exhibits because any prejudicial information in the exhibits

---

[18] *Id.* at 152.

[19] 339 S.W.3d 441, 446–47 (Ky. 2011).

[20] *Id.* at 447.

[21] *Id.*

[22] 560 S.W.3d 844, 846 (Ky. 2018).

[23] *Id.* at 845.

could have been discovered through a reasonable investigation and defense counsel allowed them to be submitted to the jury without reviewing them. Any error that resulted from the extraneous information in the exhibits was invited because all counsel had ample opportunity to review them and make proper objections. The issue at hand is like that in *McQueen* where counsel would have been aware of the jury-empanelment issue if a reasonable investigation had been made.[24] Here, defense counsel, the Commonwealth, and the trial court engaged in two bench conferences to discuss the exhibits and their contents. Defense counsel made no objection or request to review the documents at the bench conferences or any other time during trial. Defense counsel could have become aware of any extraneous information in the exhibits if she had exercised reasonable diligence in reviewing them.

Further, counsel's actions affirmatively relinquished the right to challenge the exhibits on appeal. *Quisenberry* and *Graves* found jury-instruction issues to be waived on appeal when the attorneys approved them without objection.[25] In the current matter, Hall's counsel did not specifically approve the exhibits, but during the first bench conference in which the exhibits were discussed, the Commonwealth seemed uncertain about the information within them, and Hall's counsel specifically told the trial court she had not seen them. The Commonwealth's uncertainty as to the information in the exhibits and the defense counsel's acknowledgment that she had not

---

[24] *McQueen*, at 447.

[25] *Quisenberry*, 336 S.W.3d at 38; *Graves,* 384 S.W.3d at 152.

8

reviewed them should have resulted in either a request from defense counsel to examine them, or an objection. During the second bench conference, it became clear that the jury would have access to the exhibits during deliberations. Even though the Commonwealth stated it had double-checked them for extraneous information, Hall's counsel still made no request to review them herself and made no objection. Therefore, defense counsel invited any error resulting from the jury's access to the exhibits. Defense counsel was aware that she had not reviewed them, that the jury would have access to them, and that earlier uncertainty existed as to the information they contained. Thus, any challenge to the extraneous information in the exhibits was waived on appeal.

### 2. The extraneous information in the Commonwealth's penalty phase exhibits did not result in palpable error.

Because neither party addressed the waiver issue on appeal, we will analyze, as requested by Hall, the errors that appear of record arising out of extraneous information found in the exhibits sent to the jury room. Because this issue was unpreserved, we review for palpable error.[26] Palpable error occurs when the defendant suffers egregious prejudice that seriously affected the fairness of the proceeding and creates a substantial possibility that the

---

[26] *Stansbury v. Commonwealth,* 54 S.W.3d 293, 300 (Ky. 2015).

9

result would not have been the same despite the error.[27]  Overall, the error must have resulted in a manifest injustice.[28]

### a. The improperly admitted amended charge did not result in palpable error.

Under KRS 532.055, admissible evidence during the penalty phase includes: (1) minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor; and (2) the nature of prior offenses for which he was convicted.  But, "[t]he evidence of prior convictions is limited to conveying the jury the elements of the crimes previously committed . . . .  Additionally, the trial court should avoid identifiers, such as naming of victims, which might trigger memories of jurors who may—especially in rural areas—have prior knowledge about the crimes."[29]

During the penalty phase of Hall's trial, the jury was potentially exposed to extraneous information including a prior amended charge of second-degree burglary, names of two prior victims, one of whom was from the surrounding area, and a court document stating he was likely to recidivate.  Overall, it was

---

[27] *Id.* at 300 ("A palpable error 'affects the substantial rights of a party . . . and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.'  To ascertain the existence of manifest injustice, 'a reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable.'") (citing *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky. 2006)).

[28] *Prescott v. Commonwealth*, 572 S.W.3d 913, 922 (Ky. App. 2019) ("When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process.").

[29] *Mullikan v. Commonwealth*, 341 S.W.3d 99, 109 (Ky. 2011).

error for the jury to have access to the amended charge and names of victims, but this did not result in a manifest injustice.

The jury's exposure to Hall's amended charge did not egregiously affect his sentence. In deciding if improperly admitting dismissed or amended charges constitutes palpable error, the reviewing court considers if the defendant was ultimately sentenced to the maximum penalty and how directly the jury was introduced to the extraneous prejudicial information.[30] For example, in *Blane v. Commonwealth,* the jury's exposure to improper direct testimony about incorrect and ultimately dismissed charges created a palpable error and warranted resentencing.[31] The live, incorrect testimony about the defendant's prior charges was unduly prejudicial and likely had a significant effect on the jury's penalty deliberations.[32]

In contrast, in *Martin v. Commonwealth* no palpable error occurred even though the jury had access to the defendant's amended charges during their penalty deliberations because the trial testimony about the prior convictions was proper.[33] The jury's less direct exposure to the defendant's amended and dismissed charges during deliberations, as compared to hearing live, incorrect testimony, decreased the risk that the extraneous information would egregiously affect the outcome.[34] The Court found it was more likely the jury's

---

[30] *Martin,* 409 S.W.3d at 348–49.

[31] 364 S.W.3d 140, 153 (Ky. 2012).

[32] *Id.* at 153.

[33] 409 S.W.3d at 348–49.

[34] *Id.* at 349.

11

sentence was influenced by the defendant's criminal history and the crime committed instead of the amended charges.[35]  Similarly, in *Miller v. Commonwealth*, the erroneous discussion of the defendant's uncharged prior bad acts was error but did not result in a manifest injustice because the jury was properly aware of the defendant's three prior convictions, multiple parole violations, and continued drug use on parole.[36]  The jury's exposure to his uncharged conduct was erroneous, but the jury was not so unfairly influenced by it to constitute palpable error in light of his other criminal conduct.[37]

During deliberation in Hall's penalty phase, the jury had access to an exhibit listing his amended charge of second-degree burglary.  The discrepancy between the indictment charging him with first-degree burglary and the judgment explaining his plea to second-degree appears on separate pages.  Appellant contends the indictment was the first page of the documents sent back to the jury.  It is uncertain whether the jury viewed the exhibits because the documents were handed to the bailiff only to give to the jury if they requested to see them.  While it is unclear if the jury saw this extraneous information, this analysis will presume it did.[38]

---

[35] *Id.*

[36] 394 S.W.3d 402, 405–408 (Ky. 2011).

[37] *Id.* at 408.

[38] *Martin,* at 348 (Ky. 2013); *Parker v. Commonwealth,* 482 S.W.3d 394, 407 (Ky. 2016) ("The trial record does not make clear that the certified documents were, in fact, admitted into evidence.  And even if they were introduced, the record further does not establish that the jury had access to them.  Nevertheless, as in *Martin* we may presume that the unredacted certified records were erroneously provided to the jury when it retired to deliberate.") (citation omitted).

It was error to show the amended charge. But we are satisfied that such error did not likely influence the jury's sentence. By way of live testimony given by Hall's parole officer, the jury was made aware of Hall's prior convictions and this was one prior conviction among eight. Additionally, unlike in *Blane*, where the jury heard trial testimony about incorrect amended and dismissed charges, Hall's jury was never directly informed of the amended charge.[39] Here, the circumstances are more like *Martin*, as the jury was only exposed to an amended charge during the deliberations, and it was for the same crime of which Hall was eventually convicted, just for a lesser degree. Additionally, the jurors heard testimony regarding his prior offenses and were aware of the second-degree burglary charge. So, while the jury may have considered his prior offenses in determining his sentence, it is unlikely it specifically considered that he was originally charged with first-degree burglary but pleaded to second-degree. While this information should not have been submitted to the jury, it does not seem likely it was heavily considered in deciding Hall's sentence.

### b. Exposure to the names of Hall's prior victims did not result in palpable error.

Hall's jury also had access to exhibits containing the names of two of his victims from earlier crimes, but we again conclude such error did not egregiously affect his sentence. In *Stansbury v. Commonwealth*, the jury's

---

[39] *Blane*, 364 S.W.3d at 152-53. Also, the Court notes that in *Taulbee v. Commonwealth*, 438 S.W.2d. 777, 779 (1969), prejudice was presumed because of the jury's exposure to direct inflammatory testimony by the prosecutor; however, the current facts involve no issue with trial testimony.

access to the defendant's amended charges and the names of his prior victims who were from the same small county as where the jury was seated resulted in palpable error.[40]  In a rural area, when the jury is exposed to the name of a victim from the same venue as the trial, it is perhaps more likely a juror might know the victim or their family.[41]  Further, Stansbury's jury was also exposed to his amended charge for one out of two of his prior convictions.[42]  An amended charge among a limited criminal history is more prejudicial than when it is listed within an extensive criminal history because it becomes more likely the jury will notice it and give it weight in their deliberations.[43]  The combination of the substantial prejudice from the jury's exposure to the victim's names and the amended charge resulted in a manifest injustice.[44]

In the present case, the jury was exposed to the name of Jennifer Hall, who is from Fleming County, because that name appeared on the exhibit evidencing Hall's prior domestic-violence charge in that county.  Hall argues that because Fleming County is near Bracken County, where the present trial took place, and both are rural counties, palpable error occurred as in *Stansbury*.  But during voir dire at Hall's trial the prospective jurors were asked if any of them knew Jennifer Hall because she is Hall's former spouse.  Additionally, the chance of a jury member knowing Jennifer Hall is lessened by

---

[40] 454 S.W. 3d 293, 304–05 (Ky. 2015).

[41] *Id*. at 304.

[42] *Id*. at 305.

[43] *Id*.

[44] *Id*.

her residing in Fleming County rather than Bracken County.  Bracken and Fleming Counites are both within the 19th Judicial Circuit but are separated from each other by Mason and Robertson counties.  There is a remote chance that a member of the jury did not forthrightly respond during voir dire concerning their knowledge of Jennifer Hall, but the inquiry removes the likelihood of prejudice as identified in *Stansbury.*  The trial taking place in a venue different from the venue where the prior charge was prosecuted combined with the screening during voir dire renders unlikely the prospect that the appearance of Jennifer Hall's name as a victim in Hall's criminal history was extremely prejudicial to Hall.

In another exhibit, the jury had access to the name of Hall's previous victim, "Officer Charlie Sims," who is listed in Hall's 2001 Adams County, Ohio indictment for intimidation of a witness.  However, there is no evidence or indication that any member of the jury knew the officer, or that he was from Bracken County.  Further, the incident apparently arose in Adams County, Ohio, which lessens the probability that a member of this Bracken County jury knew Officer Charlie Sims.  We are satisfied that the appearance of Officer Charlie Sims's name in an exhibit potentially viewed by the jury did not result in the extreme prejudice as in *Stansbury.*

Although the names of the previous victims were admitted alongside an amended charge, unlike *Stansbury*, where the defendant only had two prior convictions and the amended charges related to one of the two, Hall has an extensive criminal history and his jury was properly made aware of his seven

15

prior convictions during the trial.[45]   Therefore, while it was error for the jury to have access to the amended charge and the names of his prior victims, the probability that the outcome was egregiously affected by these errors is low and does not constitute palpable error.

### c. The jury's access to information that Defendant was likely to reoffend did not result in palpable error.

Also available to the jury were documents stating Hall had violated his community control for prior crimes, had committed new offenses before completing parole, and that he was likely to recidivate.  For example, page two of the Commonwealth's Exhibit #13 lists a finding that Hall is likely to reoffend because he has committed offenses while on community control in Ohio and has a repetitive criminal history.  The jury knew of his criminal history because of his parole officer's testimony about Hall's seven prior convictions and that he was a repeated felony offender.  The jury could reasonably infer from the testimony that because he had repeatedly offended in the past, he was likely to do so again, and therefore the maximum penalty should be imposed.  Further, the jury asked one question during their brief deliberations regarding how long Hall had served for his previous eleven-year sentence.  This may suggest that the jury was contemplating his prior convictions and the effectiveness of his

---

[45] 454 S.W. 3d at 305 ("Stansbury's only prior convictions consisted of two counts of third-degree burglary and third-degree criminal mischief and one count each of third-degree assault and third-degree arson.  We cannot say that introduction of the dismissed wanton endangerment charge, which was filed in conjunction with the assault and arson charges, did not have an impact.  Furthermore, we cannot say that the introduction of the identities of local victims with whom the jurors might have had a connection did not have an impact.").

past punishments. While it cannot be said that the jury's sentence of twenty years was not influenced by the extraneous information, it did not cause such egregious error to result in a manifest injustice.

Hall's jury was erroneously exposed to extraneous information during deliberation of the penalty phase of Hall's trial in the form of an amended charge, names of the two prior victims, and a statement that Hall was likely to reoffend. We find that this exposure did not create a substantial likelihood of manifest injustice. The jury's recommended sentence of twenty years was more likely the result of consideration of Hall's extensive criminal history, ineffectiveness of previous punishments, and lack of acceptance of responsibility. Moreover, we are persuaded that Defense counsel waived the erroneous nature of the exhibits. We conclude that Hall is not entitled to a new penalty phase.

### III.     CONCLUSION

For the reasons stated above, we affirm the judgment.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Molly Mattingly
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

James Patrick Judge
Assistant Attorney General